61353. INTERNATIONAL COMPUTER GROUP, INC. v. DATA GENERAL CORPORATION.
61354. COMPUTER SYSTEMS INTERNATIONAL, INC. v. DATA GENERAL CORPORATION.

CARLEY, Judge.

Because similar issues are raised, these two cases are consolidated on appeal. Appellee-Data General Corporation (DGC) is a manufacturer of computer hardware and software. Appellant

Computer Systems International (CSI) and appellant International Computer Group (ICG) are distributors of computer equipment and both order equipment from DGC in the regular course of business. Suit was filed by DGC against CSI and also against ICG, each suit seeking a recovery of the amounts allegedly owed to DGC for the sale of computer equipment to CSI and ICG respectively. CSI and ICG filed their answers, denying the alleged indebtedness to DGC in part, asserting payment as to other parts, and raising the affirmative defenses of partial and total failure of consideration as to the remaining elements of their respective alleged unpaid indebtedness. Both CSI and ICG counterclaimed against DGC alleging respectively breach of contract, breach of implied warranty or interference with their respective contractual relations with third parties.

DGC filed motions for summary judgment in both main actions and on both counterclaims. Summary judgment was granted to DGC on its claims against CSI and DGC and on their counterclaims against it. It is from the respective orders granting summary judgment to DGC as to all issues that CSI and ICG appeal.

1. An item of indebtedness common to each suit is the amount of sales tax on equipment sold by DGC to CSI and to ICG. Apparently at the time of the sale of the equipment to the respective appellants the amount of the tax appropriate to the sale was added by DGC to the price charged and DGC then paid the amount of the tax charged over to the Commissioner of Revenue. Code Ann. § 91A-4511. CSI and ICG paid all the amounts owing to DGC for the sale of the equipment with exception of the amounts which represented the sales tax. DGC sought recovery of the amounts representing the tax under Code Ann. § 91A-4512, which provides in part: "The tax shall be a debt from the purchaser or consumer to the dealer until it is paid and shall be recoverable at law in the same manner as authorized for the recovery of other debts."

In support of its motion for summary judgment as to this element of the indebtedness, DGC submitted the affidavit of its Corporate Credit Manager which stated that the "[s]ales tax . . . was included [in the amount charged CSI and ICG respectively for the equipment] because [DGC] never received any satisfactory proof that any sales tax charge was not appropriate." Under Code Ann. § 91A-4507 "[a]ll gross sales of a retailer are subject to the tax until the contrary is established" and "[t]he burden of proving that a sale of tangible personal property is not a sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale." Thus, DGC's evidence in support of its motion for summary judgment as to the amounts representing the sales tax was that it had made the sale of

the equipment and included the sales tax in the price charged because it had not received from CSI or from ICG "a certificate to the effect that the property [was] purchased for resale."

We find that the transactions were "retail sales" as to DGC under Code Ann. § 91A-4501 (f) (1), and that the evidence of CSI and ICG was totally insufficient to refute DGC's evidence that the transactions were taxable sales under Code Ann. § 91A-4507. Under Code Ann. § 91A-4507 in order for the retailer, DGC, to avoid the burden of proving that a sale of tangible personal property is not a sale at retail and therefore taxable to the retailer, the retailer must take from the purchaser, CSI and ICG, "a certificate to the effect that the property is purchased for resale." DGC has denied receiving any such certificate from either CSI or from ICG with reference to the underlying transactions. The evidence for CSI and ICG does not controvert the evidence that they did not furnish DGC with the requisite certificate contemplated by Code Ann. § 91A-4507 (c) which would have the effect of removing the underlying transactions between themselves and DGC from potential taxability. Indeed, the only evidence for CSI and IGC is that DGC was supplied with the "tax exempt number" of their customer. It is readily seen that this does not satisfy the "certificate" requirement of Code Ann. § 91A-4507, leaving the affiant's statement that "[s]tate tax is not owed to [DGC]" a bare conclusory allegation. *Hart v. Trust Co.,* 154 Ga. App. 329 (268 SE2d 384) (1980). The trial court did not err in granting summary judgment to DGC as to the claims for the amount of state taxes owing from CSI and ICG. See *Indian River Const. Co v. Beloit Passavant Corp.,* 241 Ga. 282 (244 SE2d 814) (1978); *Thyer Mfg. Corp. v. Drake,* 217 Ga. 114 (121 SE2d 136) (1961). Accordingly, CSI's enumeration of error 1 and ICG's enumeration of error 3 are without merit.

2. With regard to various accounts underlying the alleged indebtedness of CSI and ICG it is urged that genuine issues of material fact remain with reference to whether "the complete order" had been received, whether there had been "partial payment" on the account or whether any portion of the account sued on is owed to DGC under Code Ann. § 109A-2—717 which provides: "The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." We find these arguments meritless with regard to the indebtedness of CSI. The affidavit of CSI's business manager containing the conclusory statement that certain equipment "was not delivered" to the intended third party "end user" does not rebut the fact that "all of the merchandise" was received as established in the affidavits of the

Vice President and the Assistant Vice President for Finance of the "end user" itself. See *Textile Prod. v. Fitts Cotton Goods,* 124 Ga. App. 421 (184 SE2d 14) (1971); *Young v. Climatrol Southeast Dist. Corp.,* 141 Ga. App. 235 (233 SE2d 54) (1977). " 'When uncontradicted and unimpeached evidence is produced as to the real facts, [any] inference [to the contrary] disappears, and does not create a conflict in the evidence so as to require its submission to a jury.' " *Helms v. Young,* 130 Ga. App. 344, 348 (203 SE2d 253) (1973). Likewise, under the evidence we find no issue of fact remains with regard to CSI's "partial payment" on this account. *Franklin Acceptance v. Salter,* 102 Ga. App. 742 (118 SE2d 118) (1960). Moreover, the unrebutted evidence that CSI received full payment from its customer, the "end user" of the equipment, negates any contention that CSI suffered any otherwise recoverable loss or "damage" as the result of a breach of the contract by DGC. See *Carter v. Greenville Service Co.,* 111 Ga. App. 651 (143 SE2d 1) (1965). Compare *Warren's Kiddie Shoppe v. Casual Slacks,* 120 Ga. App. 578 (171 SE2d 643) (1969). Accordingly, CSI's enumerations of error number 3 and 4 are without merit. In addition, part of CSI's counterclaim is merely a restatement of its assertion that DGC "breached" the contract underlying this account and that DGC, therefore, is liable for damages resulting from that breach. We repeat that the evidence demonstrates that even if all the equipment was not "delivered" at the time expected in breach of the contract it was in fact "received" by the "end user" who paid the full contract to CSI. There is absolutely no evidence that CSI suffered any "damage" under these circumstances. CSI's enumerations of error 6 and 7 are without merit.

However, with regard to certain "Alcan" accounts alleged to be owing by ICG we find the record less conclusive. ICG's evidence is to the effect that certain pieces of equipment were not delivered to its customer, the "end user," and that it notified DGC of this deficiency. Contrary to DGC's assertion, the affidavit of the Manager for Systems and Planning of the ultimate "end user" of the equipment does not establish that *all* of the equipment referenced in the underlying accounts sued on was in fact received by the ultimate customer. Therefore, it cannot be said conclusively that no issue of fact remains with regard to whether actual delivery was made of all the equipment for which payment is being sought. See *Southwire Co. v. Franklin Aluminum Co.,* 114 Ga. App. 337, 338 (3) (151 SE2d 493) (1966). Since it cannot be said that all the equipment was in fact delivered to the "end user," that ICG may have received payment for what was received by its customer does not demonstrate that ICG suffered no "damage" for if some equipment was not delivered and

ICG did not receive payment therefor, ICG may be entitled to damages. See *Carter v. Greenville Service Co.,* 111 Ga. App. 651, supra. Accordingly, we must hold that it was error to enter summary judgment for the full amount of these accounts. ICG's enumerations of error number 4 and 5 are meritorious.

With regard to ICG's liability on the "Goodhart" account there is no dispute that ICG or its customer received the equipment for which DGC sought recovery. However, there is evidence, though not without conflict, that as part of the same contract and account ICG ordered but did not receive certain software equipment without which the equipment it did receive "did not have [its] full value" and that DGC was so informed. Thus, construing the evidence regarding this account most favorably for ICG, it was error to grant summary judgment to DGC for the *full* amount of this account. Under the proper construction of the evidence we cannot say that ICG is "foreclosed as a matter of law from [entitlement to a] credit against the admitted balance due on the open account." See *Beavers v. Mastan Co.,* 124 Ga. App. 498 (184 SE2d 476) (1971). ICG's enumerations of error number 1 and 2 are meritorious.

3. With reference to certain accounts alleged to be owing by CSI and which it contends have been paid in full, we find CSI's evidence extremely confusing. Apparently, in response to an initial interrogatory requesting the specifics of the general contention in CSI's answer that payments on certain accounts had been made, CSI failed to include any information relevant to the accounts due in question. However, in the subsequent affidavit of its business manager CSI asserted for the first time that these accounts had been paid in full. While we find the evidence as to payment of these accounts confusing, we cannot, however, say that it is "intentionally or deliberately self-contradictory." See *Combs v. Adair Mtg. Co.,* 245 Ga. 296 (264 SE2d 226) (1980). Therefore, construing the evidence as we must on summary judgment, we conclude that there remains an issue of fact concerning CSI's payments on these accounts. See *Burnette Ford v. Hayes,* 227 Ga 551 (181 SE2d 866) (1971). Accordingly, CSI's enumeration of error number 2 is meritorious.

With regard to CSI's liability on the Record Shack account, there is no dispute that the equipment was ordered by CSI and delivered to the ultimate "end user." CSI apparently made at least a partial payment on this account but stopped payment on the check "because the goods as delivered were not operable" and DGC was "fully apprised of the difficulties which . . . occurred with those items . . ." Therefore, under the evidence in the record before us it may be said of DGC's claim on this account that it "is for an amount

admittedly due to [DGC] by [CSI], and so shown on [the] records, unless [CSI is] entitled to credits against this amount by reason of [DGC's breach]." *Beavers v. Mastan Co.,* 124 Ga. App. 498, 499, supra. The only evidence in support of DGC's motion for summary judgment as to this account is the affidavit of its Field Service Engineer who "had occasion on approximately June 18, 1979 to perform repair work upon certain computer equipment manufactured by [DGC] which equipment was located at the Record Shack" and who averred "that the system was functional and in good operating order at the time that [he] completed [his] work on or about June 18, 1979." We find this evidence insufficient to support the grant of summary judgment to DGC on this account. Even assuming that the "certain computer equipment" referred to in the affidavit of DGC's agent is the equipment for which DGC is seeking payment, the affidavit at most establishes that the equipment was "functional" on one particular day and does not demonstrate that no issue of fact remains concerning whether the equipment was or was not "operable" in a contractual liability sense after delivery. Therefore, we cannot say that under the evidence as a matter of law DGC has negated CSI's claim that there was a breach of the contract, that notification was made and that the *full* purchase price as represented in the account is not owing. See *Beavers v. Mastan Co.,* 124 Ga. App. 498, supra. Accordingly, CSI's enumeration of error number 5 is found to be meritorious.

4. With regard to ICG's counterclaim against DGC, insofar as it merely restated a claim for damages allegedly arising from DGC's breach of certain underlying contracts it was not error to grant DGC summary judgment. Apparently ICG has chosen in its dealings with DGC to assert its right under Code Ann. § 109A-2—717 to withhold payment in varying amounts on any accounts otherwise owed to DGC but which represent a contract which DGC allegedly breached in some manner. Having chosen to assert its right to damages alleged to be the result of DGC's breach of contract defensively under Code Ann. § 109A-2—717, ICG may not seek the same damages for the same alleged breach of contract offensively in the form of a counterclaim. To hold otherwise would sanction the double recovery of contractual damages — once defensively by recoupment against the contract price and once offensively by counterclaim for breach of contract. We find ICG's enumerations of error number 6 and 7 meritless. Furthermore, ICG's counterclaim alleging that DGC interfered with its contractual relationship with one of its "end users" resulting in the termination of the lease agreement between itself and the "end user" was pierced. The unrebutted affidavit of the "end user's" System and Planning Manager established that it exercised

its rights to cancel the lease agreement with ICG "because of the conduct of ICG and its agents" and "[b]ut for such conduct of ICG, such termination would not have occurred." See *LDH Properties v. Morgan Guaranty Trust Co.,* 145 Ga. App. 132, 135 (3) (243 SE2d 278) (1978). Accordingly, we find ICG's enumeration of error number 8 to be without merit.

*Judgments affirmed in part and reversed in part. Banke, J., concurs. Deen, P. J., concurs in the judgment only.*

DECIDED JUNE 18, 1981 —
REHEARINGS DENIED JULY 7, 1981.

*Penelope W. Rumsey, Eugene Novy,* for appellants.
*Frank W. Virgin, William H. Schroder, Shayla Keough,* for appellee.