## A91A1281. INTERNATIONAL MULTIFOODS CORPORATION v. NATIONAL EGG PRODUCTS.

(414 SE2d 253)

ANDREWS, Judge.

International Multifoods Corporation ("Multifoods") appeals the granting of appellee's cross-motion for summary judgment arising from the following facts. Multifoods manufactures baked good mixes and uses free-flowing egg yolk as a main ingredient in such mixes. National Egg Products, a division of Hudson Foods ("NEPCO") manufactures and sells free-flowing egg yolks. Multifoods and NEPCO had a continuing relationship for the purchase of free-flowing egg yolk from October 5, 1977 until December 30, 1988.

In 1977 NEPCO provided a guarantee to Multifoods in which NEPCO guaranteed that none of the food sold to Multifoods would be adulterated at the time of delivery. Neither party disputes that such guarantee remained effective through December 1988.

In June 1988 Multifoods and NEPCO contracted for the sale of 75,000 pounds of egg yolk to be shipped at the direction of Multifoods between June and December 1988. In this regard, a confirmation of sale, the same document which the parties had used since March 1977, dated June 3, 1988 for the 75,000 pounds contained the following salmonella guarantee: "The Seller, National Egg Products guarantees that all products covered under this sales confirmation have been sampled by appropriate sampling techniques and have been tested by the recommended Food and Drug Administration testing methods and found to be salmonella negative by test. The buyer has ten days from the date of receipt of the products to test for salmonella and to accept it or notify the seller that all or any part of the shipment is rejected. If the seller has not received notice within ten days that any part of the shipment is rejected, absence of such notice shall be construed by both parties as final acceptance of the product. In any event, when any of the product covered by this confirmation has been used with any other ingredient, such use shall signify final acceptance of such product since the seller exerts no control over any other such ingredient."

On November 14, 1988, the specific transaction underlying this appeal occurred when Multifoods purchased 25,000 pounds of the egg yolk. On November 15, 1988 pre-shipment samples, which Multifoods required for the purpose of pre-manufacturing testing, were sent to Multifoods' quality assurance supervisor. Accompanying the samples was a letter which stated: "This letter covers pre-shipment samples of Egg Yolk Solids Free Flow being forwarded under separate cover to you for Functional Properties and Viscosity evaluation only." Multifoods was also sent a "Quality Assurance Certificate," dated November 22, which analyzed and found no salmonella in the sample lot.

NEPCO concluded its testing of the entire lot on November 21, 1988, and a subsequent quality assurance certificate verifying that no salmonella was present in the product was signed on December 1, 1988. The product left NEPCO on the same date and was received by Multifoods on December 5. There is a discrepancy in the record as to whether Multifoods took samples for salmonella testing from the lot on this date or on December 9. In any case, on December 8, before any salmonella test results had returned, Multifoods began adding portions of the lot to its mixes. On December 15, tests were returned which indicated that the lot did contain salmonella. Multifoods advised NEPCO on December 16, 1988, that the lot was adulterated.

After receiving notice that the lot was adulterated, NEPCO requested that the remaining, unmixed portion of the lot be shipped back to it and Multifoods was given credit for the portion which was returned.

Multifoods filed a seven-count complaint for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, negligent misrepresentation, breach of contract, and violation of the Georgia Food, Drug & Cosmetic Act. Multifoods claimed damages for the product itself and for the consequential damages it claimed to have incurred by mixing the contaminated egg yolk. NEPCO counterclaimed, alleging that Multifoods was responsible for the losses because of its failure to test prior to mixing, and claimed that Multifoods owed damages for the mixed portion of the product. The parties filed cross-motions for summary judgment. In granting NEPCO's motion, the superior court stated that "[i]f the Court accepts Multifoods' argument that NEPCO's confirmation of sale only deals with Multifoods' acceptance or rejection of NEPCO's tender, then the question of whether or not Multifoods discovered the breach as soon as it should have becomes a dispositive issue under O.C.G.A. Sec. 11-2-607 (3) (a)." The trial court concluded that Multifoods did not discover the breach as soon as it should have. The trial court then concluded that the confirmation of sale put Multifoods on notice that once the product was combined with other ingredients, it was deemed accepted.

1. Although Multifoods' sole enumeration of error is that the trial court erred in granting summary judgment, the company sets forth five arguments concerning the trial court's alleged error in this regard, which we will address separately. In its first argument, Multifoods claims that the trial court overlooked NEPCO's limitation on the uses to be made of pre-shipment samples when it found that Multifoods should have discovered the contamination from pre-shipment samples. This argument is without merit. It is clear from a reading of the letter accompanying the pre-shipment samples that the statement

that such samples were being sent for functional property testing and viscosity use "only" was not a limitation on the uses to which Multifoods could put the samples, but was language used to protect NEPCO. From both evidence in the record and from the letter itself, it is apparent that the meaning of the letter was to distinguish the sample product from that which was sent for other uses.

2. In its second contention, Multifoods argues that the ten-day limitation within which to reject the product in the confirmation of sale constituted a material additional term which did not become part of the contract. This argument is also without merit. Pretermitting the question of whether the provision, which had been used by the parties for 11 years, was part of the contract, there is no indication that the superior court's decision was based upon this provision. Although the superior court's order mentioned the limitation, the court's decision did not hinge on that provision and any alleged error would necessarily be harmless. See generally *Merrill v. Eiberger*, 198 Ga. App. 806 (403 SE2d 91) (1991).

3. In its third argument, Multifoods claims that the terms of the confirmation of sale do not limit or negate the express warranties given by NEPCO to Multifoods. Again Multifoods' argument is without merit since it misconstrues the basis of the superior court's ruling. The trial court's conclusion regarding the warranty was based on the fact that Multifoods did not give notice within a reasonable time after it should have discovered the breach. The court reached this conclusion without regard to the confirmation of sale, to which it referred regarding acceptance. Accordingly, this contention is without merit.

4. Multifoods argues that its notice of breach[1] to NEPCO was reasonable under OCGA § 11-2-607, or is, at least, a question of fact for the jury. At the outset we note that Multifoods admits that it accepted the product and despite the arguments raised here regarding revocation and rejection, these issues are not dispositive of whether notice of the breach of warranty was timely. See OCGA §§ 11-2-606; 11-2-607; 11-2-608. "OCGA § 11-2-714 applies where a buyer claims breach of contract regarding *accepted* goods." *Wolfes v. Terrell*, 173 Ga. App. 835, 836 (2) (328 SE2d 569) (1985). "Absent an explicit contract term so providing, even explicit acceptance does not foreclose buyer's suit for breach of warranty." White & Summers, Uniform Commercial Code, (3d ed.), § 8-2, p. 392.

The narrow issue presented here is whether Multifoods gave reasonable notice under OCGA § 11-2-607 of the breach of warranty

---

[1] From the evidence presented below, it appears that the question of proximate cause in this case may be a factual one, although we make no determination here regarding this issue. In this regard see *United States v. 1200 Cans Pasteurized Whole Eggs*, 339 FSupp. 131 (N.D. Ga. 1972).

claim so as to permit its recovery. OCGA § 11-2-607 (3) (a) provides that when a tender has been accepted the buyer must, within a reasonable time after he discovers or *should have* discovered the breach, notify the seller of it or be barred from remedy. Here, the trial court concluded that because, as a matter of law, Multifoods did not exercise due diligence in discovering the breach, its notice to NEPCO was untimely.

We have been unable to find a Georgia case regarding the requirement of timely notice under OCGA § 11-2-607 (3) (a) in the context of a perishable good. See generally *Hudson v. Gaines*, 199 Ga. App. 70 (2) (403 SE2d 852) (1991); *Ohoopee Prod. Credit Assn. v. Aspinwall*, 183 Ga. App. 306 (358 SE2d 884) (1987); *Economy Forms Corp. v. Kandy*, 391 FSupp. 944, affirmed 511 F2d 1400 (N.D. Ga. 1974). Nevertheless, "[t]he requirement that notice be given within a reasonable time is important, especially when the alleged breach concerns perishables. The purpose of the rule, as stated in the comment to the UCC, is to defeat commercial bad faith. If the seller is notified of a breach within a reasonable time he has opportunity to ascertain for himself the nature and extent of the breach by taking advantage of UCC § 2-515 which gives either party upon reasonable notification to the other, the right to inspect, test and sample the goods . . . for the purpose of ascertaining the facts and preserving evidence." *A. C. Carpenter, Inc. v. Boyer Potato Chips*, 7 UCCRS 493, 495 (1969).

The question of reasonableness of notice is ordinarily a factual one, although summary adjudication is appropriate if the uncontroverted facts establish that a plaintiff is not entitled to recover. *Griffith v. Stovall Tire &c.*, 174 Ga. App. 137, 139 (329 SE2d 234) (1985). Here we conclude that the trial court's grant of summary judgment was proper because of the following undisputed facts. See OCGA § 11-2-204 (2). First, the warranty provided that the egg yolk would be free of salmonella *at the time of delivery*. Given the limited terms of the warranty and the perishable nature of the product being shipped, the corresponding time period for notice in this commercial context was necessarily brief. Without reaching questions regarding the binding nature of the ten-day time limitation in the confirmation of sale, the existence of this clause alone should have alerted Multifoods to the fact that only a short period was available within which to give notice. Further, Multifoods required pre-shipment samples of the yolk, and despite a previous policy of testing the ingredient, chose not to test the sample for salmonella. When the product shipment arrived, Multifoods again chose to forego testing it and mixed the product before learning if salmonella was present. Given all of these factors, the trial court's conclusion that Multifoods' notice to NEPCO was not, as a matter of law, within a reasonable time after it should have discovered the breach was proper. Compare *Blommer Chocolate*

*Co. v. Bongards Creameries*, 635 FSupp. 919 (N.D. Ill. 1986), on rehearing 644 FSupp. 234 (1986).

Multifoods' argument that the trial court's determination regarding due diligence had no bearing on the other counts of the complaint is not argued as an enumeration of error and will not be addressed.

5. Finally, Multifoods argues that Federal Food & Drug Administration regulations allow Multifoods to meet its duty to use only pure ingredients by purchasing ingredients under supplier's guarantee or certificate. Multifoods cites no authority for the proposition that the federal requirement allows a manufacturer/buyer to maintain a breach of warranty claim in the instant factual situation, nor does the regulation itself support this contention. Therefore, this contention is without merit.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 20, 1991 —
RECONSIDERATION DENIED DECEMBER 17, 1991 — 

*Robins, Kaplan, Miller & Ciresi, R. Dennis Withers, Lisa L. Heller*, for appellant.

*Strauss & Walker, John T. Strauss, Rebecca P. Dally*, for appellee.