A96A1948. ATWOOD et al. v. SOUTHEAST BEDDING COMPANY, INC.
(485 SE2d 217)

BEASLEY, Judge.
Southeast Bedding, d/b/a Loving Care, manufactures mattresses and box springs. It sued retailers Atwood and Pennington, d/b/a The Mattress Store, on open account. As both a defense and a counterclaim, Atwood and Pennington asserted breach of contract and

breach of warranty on the ground that some of the merchandise Southeast shipped to them was defective. On Southeast's motion for summary judgment, the court ruled that Atwood and Pennington were barred from any remedy due to their failure to give notice of defects that complies with OCGA § 11-2-607 (3) (a).

In one enumeration, appellants argue that the court erred in granting Southeast summary judgment as to appellants' counterclaim. Their other enumeration is that the court erred in granting Southeast summary judgment on its complaint. Both enumerations depend upon appellants' ability to show there is a genuine issue of material fact that they gave the statutory notice.

1. Appellants argue that notification was given in primarily two forms: verbal, during the course of performance, with some complaints sent by facsimile transmission; and written, after termination of the account.

On December 7, 1992, appellants placed their first bedding order on the account. They placed many more orders over the next several months, but in September 1993 Southeast became concerned because the unpaid balance on the account was over $42,000. On October 13, the parties agreed that future orders would be paid on delivery, with appellants making additional payments toward the account balance. Southeast was dissatisfied with the debt payments and terminated the account on November 5, retrieved the unsold merchandise from appellants' stores and credited appellants' account. This resulted in the balance of $20,427.55 for which it eventually sued.

On November 11, appellants through counsel delivered a letter to Southeast informing it they would assert claims for breach of contract and warranty in the event Southeast sued on the account. The letter specifically stated it was to serve as proper notice under OCGA § 11-2-607 (3) (a) that goods appellants had received were unacceptable. The letter asserted there were defects beginning with the very first delivery in December 1992.

In letter briefs to this Court, the parties address the appellants' decision that no depositions be included in the record on appeal. Despite appellants' contention that the trial court's order does not mention any deposition, the court specifically relied on Atwood's deposition for evidence that any goods rejected had been either replaced or returned for credit and that in November all goods were either reclaimed by Southeast Bedding or had been sold previously or otherwise disposed of by appellants. As the court correctly noted, this established acceptance of the goods. *Contract Sales &c. v. American Express &c.*, 216 Ga. App. 61, 62 (453 SE2d 62) (1994).

Southeast contends the decision to omit a deposition which was relied on by the trial court requires that we presume the grant of summary judgment is proper, citing *Peacock v. Campbell*, 223 Ga.

App. 620 (478 SE2d 410) (1996). Although *Peacock* is physical precedent only, see Court of Appeals Rule 33 (a), the rule that appellants' omission of evidence necessary for determination of issues on appeal will result in an affirmance has been established. See *Bennett v. Executive Benefits*, 210 Ga. App. 429 (436 SE2d 544) (1993). However, the deposition evidence the court cited is not such as to determine all appellate issues. Rather, the issue that relates to both counterclaims and defenses based on breach of warranty and breach of contract is whether there is any evidence to support the appellants' contention that they gave notice of defective merchandise and breach of warranty "within a reasonable time" under OCGA § 11-2-607 (3) (a). In accordance with *Bennett*, supra, we presume the court's ruling is correct, based on Atwood's deposition, that it is undisputed all rejected bedding was properly credited and the bedding upon which appellants based their defenses and counterclaims was accepted.

Because of that ruling, appellants can only pursue remedies that apply to the goods they accepted. OCGA § 11-2-607 (2) provides that "acceptance does not of itself impair any other remedy provided by this article [Article 2: Sales] for nonconformity." The buyers contend they had to repair some goods and sell them at a discount. OCGA § 11-2-714 provides that a buyer can recover damages for breach of warranty or breach of contract even though the buyer accepted the defective goods. See *Fiat Auto USA v. Hollums*, 185 Ga. App. 113, 115-116 (4) (363 SE2d 312) (1987); *Wolfes v. Terrell*, 173 Ga. App. 835, 836 (2) (328 SE2d 569) (1985); see also OCGA § 11-2-715. To recover for such, appellants must show they notified Southeast of defects in accepted goods as required by OCGA § 11-2-607 (3) (a).

In its motion for summary judgment, Southeast argued that evidence of notification of any defects was insufficient, and that the only evidence of any notice was the letter of November 11 after the parties had closed their account. Southeast admitted it had received complaints about its products throughout the course of the parties' dealings. In response, appellants filed Atwood's affidavit in which he stated that during the course of the contract's performance he verbally informed Southeast that various goods were defective.

As to the November 11 letter, the court ruled as a matter of law it did not serve as notice of defect "within a reasonable time" under OCGA § 11-2-607 (3) (a). " 'The purpose of the rule [requiring notice within a reasonable time], as stated in the comment to the UCC, is to defeat commercial bad faith. If the seller is notified of a breach within a reasonable time he has opportunity to ascertain for himself the nature and extent of the breach by taking advantage of UCC § 2-515 which gives either party upon reasonable notification to the other, the right to inspect, test and sample the goods . . . for the purpose of ascertaining the facts and preserving evidence.' [Cit.]" *Intl.*

*Multifoods Corp. v. Nat. Egg Products &c.*, 202 Ga. App. 263, 266 (4) (414 SE2d 253) (1991). Appellants' claims are for defective goods that they had to repair and sell at a discount. Written notice sent only after the relationship has been terminated and all goods either sold or retrieved by the seller does not and cannot serve the purposes of OCGA § 11-2-607 (3) (a). Notice on November 11 did not permit Southeast to inspect or cure the already sold merchandise. The timing of the notice was unreasonable as a matter of law.

As to evidence of oral notification, the court concluded that "[a]ny oral complaints made by Defendants pertaining to the merchandise received from Southeast Bedding and prior to Defendants requesting and receiving a credit from Southeast Bedding on October 13, 1993, were not reasonable as a matter of law under OCGA § 11-2-607." The Code requires that the buyer "within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." OCGA § 11-2-607 (3) (a). "The content of the notification needed merely to have been sufficient to have informed [the seller] that the transaction was ' "still troublesome and must be watched." ' [Cit.] Such notification did not need to have been in writing. [Cit.]" *Oden & Sims Used Cars v. Thurman*, 165 Ga. App. 500, 501 (1) (301 SE2d 673) (1983). To the extent the court ruled that oral notification was unreasonable because unwritten, it erred.

Atwood averred he had complained "over and over" and "on a regular basis" to Southeast about the quality of merchandise received and had to effect repairs before selling merchandise to customers at a discount. He also specified ten instances between January and November 1, in which he told various Southeast personnel that goods were defective, often immediately after inspecting the goods. This evidence presents a genuine issue of material fact as to whether there was oral notification of defective accepted merchandise. It rebutted Southeast's claim that there was no evidence of compliance with OCGA § 11-2-607 (3) (a). There is no requirement in OCGA § 11-2-607 (3) (a) that the notice specifically declare that the defective goods breach the contract, nor does OCGA § 11-2-714 impose any additional requirement as to the notice content. The notice here was sufficient to inform Southeast "that the transaction was ' "still troublesome and must be watched." ' [Cit.]" *Oden & Sims Used Cars*, supra at 500-501. See also *Great Western Press v. Atlanta Film Converting Co.*, 223 Ga. App. 861, 862-863 (1) (479 SE2d 143) (1996); *Jones v. Cranman's Sporting Goods*, 142 Ga. App. 838, 840 (1) (a) (237 SE2d 402) (1977).

As nonmovants, Atwood and Pennington are entitled to "the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most

favorably toward [them]. [Cit.]" *Garmon v. Warehouse Groceries &c.*, 207 Ga. App. 89, 91 (1) (427 SE2d 308) (1993).

OCGA § 11-2-603 does not apply as it pertains only to rejected goods. It is established that appellants have no claim for such, only for accepted but defective goods. Nor does OCGA § 11-2-602 (1) apply, as there is no issue of timely notification of *rejection* but only timely notification of defects under OCGA § 11-2-607 (3) (a). A buyer may accept some commercial units, even defective ones, and reject others. OCGA § 11-2-601 (c).

2. Appellants also argue that the court erred in granting summary judgment to Southeast on their counterclaim for breach of warranty and breach of contract under the authority of *Intl. Computer Group v. Data Gen. Corp. &c.*, 159 Ga. App. 169, 174-175 (4) (283 SE2d 12) (1981). The court ruled that having raised the breach as a defense to Southeast's suit, asserting a counterclaim based on the same breach constituted an impermissible attempt to gain a double recovery. *Intl. Computer* is physical precedent only and is not binding. Court of Appeals Rule 33 (a). Neither does the logic the court used apply. Appellants asserted in their counterclaim that they have been damaged by Southeast's breach to a greater extent than remains on the balance of the account. Should they be able to prove this at trial they would be entitled to a recovery from Southeast, with proper calculation for any sum owed on the account. Southeast argues that appellants' strategy in deciding to both withhold payments and pursue a counterclaim should, as a matter of policy, bar the assertion of the counterclaim. We "are confident that the trial court, if it comes to the issue of recovery for [appellants], will recognize that the counterclaim and the affirmative defense are alternative statements of the same issue and will not permit double recovery." *Bingham, Ltd. v. Tool Technology*, 166 Ga. App. 220, 222 (1) (303 SE2d 761) (1983). Alternative statements in pleadings are explicitly approved. OCGA § 9-11-8 (e) (2).

*Judgment reversed. McMurray, P. J., Pope, P. J., Johnson, Smith, Ruffin, JJ., and Senior Appellate Judge Harold R. Banke concur. Andrews, C. J., and Birdsong, P. J., dissent.*

BIRDSONG, Presiding Judge, dissenting.

1. Although I agree that the written notice in appellants' letter of November 11 was unreasonable as a matter of law and that the grant of summary judgment on the counterclaim was unwarranted for the reasons stated by the majority, I must respectfully dissent because I also believe that summary judgment was granted properly to Southeast Bedding because appellants failed to show they gave oral notice sufficient to invoke OCGA § 11-2-607 (3) (a).

This opinion allows appellants to retain mattresses, allegedly

knowing them to be defective, sell them for their own profit, and yet refuse to pay for them. Such a result is inconsistent with the Commercial Code of this state and contrary to accepted business practices. The majority opinion, even if arguably correct, is morally wrong.

2. Both the letter from appellants' attorney on November 11 and Atwood's affidavit state that when they notified Southeast of the defective merchandise, Southeast took action to rectify the problems either through accepting return of the items and adjusting Atwood's account or replacing the item with other merchandise. The letter states that Southeast agreed to issue credit for all returned merchandise and to issue an additional credit of five percent on all purchases from July 1, 1993 to October 13, 1993; it also states that Southeast agreed to give credit for all returned defective goods. Therefore, appellants' complaints about the quality of the bedding were directed toward defects that have already been adjusted to appellants' satisfaction, and appellants have not shown that any other complaints were made that were sufficient to constitute notice of defective goods.

3. More importantly, however, neither the letter from appellants' attorney nor Atwood's affidavit states that Southeast was notified that some items, though accepted, were so defective that Southeast was in breach. In fact, the letter acknowledges that appellants never attempted to bill Southeast for the losses they incurred because of the promises to get quality under control; it also states that it was a business decision to return only the most defective goods, and appellants admit they were given credit for these returns. All of these statements and the tone of the letter generally are inconsistent with any idea that notice was ever given to Southeast that appellants had deemed Southeast to be in breach and gave notice of that under OCGA § 11-2-607 (3) (a). Further, the first paragraph of the letter shows that this letter was intended to be *the* notice under OCGA § 11-2-607 (3) (a). Atwood's affidavit states: "I told them over and over again that the received goods did not conform to the original specifications and that the acceptance of these non-conforming goods was based upon the reasonable assumption that the non-conformities would be seasonably cured in the normal course of doing business." And, although Atwood describes the number of items returned, nowhere does he indicate the number of items on which notice was given under OCGA § 11-2-607 (3) (a) and that the items would be subject to sale under OCGA § 11-2-714. Appellants' intent in selling this merchandise is shown in Atwood's affidavit where he said the merchandise was sold at a "discount so that we could pay what we could." That statement is inconsistent with giving notice under OCGA § 11-2-607 (3) (a) or a sale under OCGA § 11-2-714. Consequently, I cannot agree that OCGA § 11-2-714 is of any benefit to

appellants. To be entitled to the benefits of this Code section, appellants must have given proper notice to Southeast of the defects in the goods under OCGA § 11-2-607 (3) (a) that would have allowed Southeast the opportunity to cure the defect. The evidence of appellants' conduct as shown in the attorney's letter and Atwood's affidavit is inconsistent with any such notice having been given which would have given Southeast this opportunity.

4. Although I agree the evidence shows that appellants complained to Southeast about its workmanship, merely complaining "over and over again" even "on a regular basis," as Atwood says, does not necessarily equal notice under OCGA § 11-2-607 (3) (a). The notice must be such to inform " ' "the seller that the transaction is claimed to involve a breach." ' " (Citation omitted.) *Oden & Sims Used Cars v. Thurman*, 165 Ga. App. 500, 501 (301 SE2d 673). "The purpose of the rule, as stated in the comment to the UCC, is to defeat commercial bad faith. If the seller is notified of a breach within a reasonable time he has [the] opportunity to ascertain for himself the nature and extent of the breach by taking advantage of [OCGA § 11-2-515] which gives either party upon reasonable notification to the other, the right to inspect, test, and sample the goods . . . for the purpose of ascertaining facts and preserving evidence." (Citation and punctuation omitted.) *Intl. Multifoods Corp. v. Nat. Egg Products &c.*, 202 Ga. App. 263, 266 (4) (414 SE2d 253). This record does not remotely suggest that Southeast was given notice that appellants claimed a breach on the items they retained. Appellants did not point to even *one* time in which an adequate notice was given. If the type of complaints to which Atwood testified are allowed to constitute the required notice, any disparaging comments about the condition of the goods will leave open the possibility of a subsequent action like this. That is not the law. Although it is true that as the non-moving party appellants are entitled to the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom in their favor (*Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843)), it is also true that this is an issue on which they would have the burden of proof at trial. Therefore, Southeast was not required to disprove affirmatively or negate this aspect of appellants' case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). Consequently, appellants failed to show that the proper notice was given. All appellants showed was that they complained a lot about the quality of the merchandise, but nevertheless retained and sold the merchandise to their customers. The notice that appellants gave together with their conduct showed that the transaction was completed, not that the transaction bore watching. Appellants *never* attempted to reconcile any of these transactions until after Southeast attempted to collect the amounts appellants owed. This

was too little and too late.

5. Moreover, OCGA § 11-2-601 does not authorize a buyer to use the procedures appellants rely on in this case. Appellants' efforts to reject the goods were untimely as a matter of law (OCGA § 11-2-602 (1)), and the affidavit and the letter show that appellants sold the goods and kept the proceeds for themselves. These actions negate any rejection of the goods, because OCGA § 11-2-603 (1) allows sale of rejected goods, but requires the proceeds, less some charges, to be held for the seller's account.

6. Accordingly, I believe that the trial court correctly granted summary judgment to Southeast and, although I agree that summary judgment on appellants' counterclaim was not appropriate under the reasons stated by the trial court, summary judgment was properly granted on the counterclaim because appellants failed to give proper notice.

I respectfully dissent. I am authorized to state that Chief Judge Andrews joins in this dissent.

DECIDED MARCH 14, 1997 —
RECONSIDERATION DENIED APRIL 4, 1997.

Before Judge Gault.
*Robert P. McFarland*, for appellants.
*Banks, Stubbs & Neville, John R. Neville*, for appellee.