A04A1043. DAN J. SHEEHAN COMPANY et al. v. CERAMIC TECHNICS, LTD.
(605 SE2d 375)

ANDREWS, Presiding Judge.
Dan J. Sheehan Company (Sheehan Co.) and its surety, United States Fidelity & Guaranty Company (USF&G), appeal from the trial

---

court's grant of summary judgment to Ceramic Technics, Ltd. (Ceramic) on its claims arising from Sheehan Co.'s failure to pay for a portion of ceramic tile supplied by Ceramic on an open account.

On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell*, 254 Ga. App. 553-554 (562 SE2d 731) (2002).

So viewed, the evidence here was that in September 2001, Sheehan Co. entered into a subcontract with McCrory Construction[1] to provide complete installation of all ceramic tile required for construction of the Oglethorpe Mall Food Court. Based on the specifications for the project, Sheehan Co. contacted Ceramic which provided sample tiles. With the sample tile, Sheehan Co. made a mockup of the tile installation for approval by McCrory, the owner, and the architect. No complaints regarding the mockup or the tile used in it were made to Ceramic.

On January 4, 2002, Ceramic faxed a credit application to Sheehan Co. for completion. The application was faxed back to Ceramic, signed by Brendan Sheehan, a Sheehan Co. vice president, on January 15, 2002. On the front of the application, in bold capitalized print, is the following: "We certify that all statements and representation on this application are true and correct. We certify that we have read the sellers terms and conditions listed on this application and agree to be bound thereby."

Sheehan Co. issued purchase orders to Ceramic for tile over several months and Ceramic shipped tile between February 16, 2002, and April 4, 2002. Ceramic then submitted invoices to Sheehan for $178,532.32 and Sheehan Co. paid $124,532.32, leaving a balance of $54,000. All of the tile provided by Ceramic was installed on the project.

Ceramic filed suit on numerous theories, including action on an open account. Sheehan Co. filed its answer and counterclaimed for breach of contract, contending that the tile was nonconforming.

Ceramic moved for summary judgment on the grounds that the tile had been accepted by Sheehan Co., there had been no revocation of the acceptance, and payment of the liquidated amount was due, plus interest and attorney fees.

---

[1] McCrory was the general contractor for the owner of the mall, General Growth Properties, Inc. USF&G supplied the payment bond to Sheehan Co.

1. In its first enumeration of error, Sheehan Co. contends that the trial court erred by "failing to properly apply OCGA § 11-2-607 (3) (a)," based on *Wal-Mart Stores v. Wheeler*, 262 Ga. App. 607 (586 SE2d 83) (2003).

OCGA § 11-2-607 (3) (a) provides that "[w]here a tender has been accepted: (a) [t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

This enumeration is addressed to the trial court's grant of summary judgment to Ceramic on Sheehan Co.'s counterclaim.

Ceramic's affidavit of Fielding, its president, submitted in support of its motion for summary judgment, stated that "[n]one of the ceramic tile was rejected by Sheehan, nor was acceptance of the tile subsequently revoked" and that "[n]o notice of rejection of the tile was given by Sheehan to Ceramic Tile." In opposition, Brendan Sheehan's affidavit was submitted. In it, Sheehan states that at a pre-installation conference held with the owner, the architect, McCrory, and Sheehan Co. on February 13, 2002, Sheehan Co. raised issues regarding the dimensional compliance with the specifications of the tile supplied to that point. During this conference, a phone call was made to Ceramic by the architect during which this alleged noncompliance was addressed and Ceramic advised that the tile supplied either did comply with the specifications or any noncompliance would be rectified. Sheehan Co. was then directed by the owner and architect to proceed with installation of the tile and did so.

Sheehan Co. acknowledges that it was not until June 18, 2002, that it gave what it describes as "formal notice" to Ceramic of concerns with the tile and invited Ceramic's efforts to resolve the tile issues. As also acknowledged by Sheehan Co., there is a dispute among several tile experts as to whether the tile complies with the dimensional specifications or whether it was improper installation causing the lippage problems in the finished food court.

Sheehan's reliance on *Wal-Mart Stores*, supra, for its argument that the mere passage of time is not sufficient to show unreasonableness of the buyer's notification to the seller is misplaced. That case involved a retail transaction and specifically noted that "what constitutes a reasonable time in cases involving retail transactions is judged differently from those involving commercial transactions." Id. at 608-609 (1).

This situation is factually similar to and controlled by the commercial situation discussed in *Imex Intl. v. Wires Engineering*, 261 Ga. App. 329 (583 SE2d 117) (2003). There, Imex was a manufacturer of diamond wire, made by coating aircraft cable with polyurethane to cause diamond beads to adhere to the cable. Imex ordered a machine for this purpose from Wires Engineering and the machine

was delivered in January 1999. Imex made a partial payment on the invoice, but made no written protest of the price or the machine's performance until July 22, 1999, when it purported to reject it for claimed poor performance.

Imex also ordered diamond wire and diamond beads from Co. Fi. on January 4, 1999. The wire and beads were shipped by Co. Fi. under four separate invoices totaling $81,500. Imex acknowledged receipt of the goods and the correctness of the invoices, but, after making partial payment, demanded credits because of alleged defects in the beads. The beads had already been used to manufacture diamond wire which had been sold to Imex's customers who expressed dissatisfaction with it.

This Court held that, by using the machine provided by Wires for over a month and incorporating the beads into a final product, the purported rejection months later was ineffective because the seller was not seasonably notified of the rejection in such terms that the seller could understand that the notice constituted rejection of the goods delivered. *Imex Intl.*, supra at 334 (2) (b), (c), 338-339 (5), (6). Similarly here, we agree, as the trial court apparently concluded, that the June 18, 2002 letter was not sent in a reasonable and seasonable fashion. See also *Intl. Multifoods Corp. v. Nat. Egg Products*, 202 Ga. App. 263, 265-266 (4) (414 SE2d 253) (1991).

Further, even had it been timely sent, it is not clear on its face that it is a rejection of the tile already in place.

Even if the letter had been timely and clear, because the tile remains installed, such continued use of allegedly defective goods constitutes reacceptance of them. *Imex Intl.*, supra at 334 (2) (d); see also *Griffith v. Stovall Tire &c.*, 174 Ga. App. 137, 138 (1) (329 SE2d 234) (1985); *Atlantic Aluminum &c. v. Adams*, 123 Ga. App. 387, 390 (1) (181 SE2d 101) (1971).

Also persuasive regarding these issues are *United States v. Crawford*, 443 F2d 611 (5th Cir. 1971), and *Clow Corp. v. Metro Pipeline Co.*, 442 FSupp. 583 (N.D. Ga. 1977), relied upon by Ceramic in its motion below. In *Crawford*, supra, 18 fuel filter/separator units were ordered from Fram Corporation in March 1968, delivered in September 1968, and partial payment was made. A year later, Fram sued for the remaining purchase price and Crawford counterclaimed contending the now installed equipment was defective. This attempted revocation was found ineffective.

In *Clow*, supra, pipe and related materials were provided by Clow Corporation to Metro Pipeline Company and installed in a water main extension project. When Clow sued for the remaining purchase price, Metro asserted its counterclaim contending the pipe was defective. Here also, the Fifth Circuit concluded that Metro had not satisfied the requirements of OCGA § 11-2-607 (3) (a).

There was no misapplication of OCGA § 11-2-607 (3) (a).

2. In its second enumeration, Sheehan Co. argues that the trial court failed to acknowledge the breach of contract by Ceramic in submitting tile which failed to meet the specifications.

Initially, as set out in Division 1, the trial court did consider the counterclaim of Sheehan Co. which included the allegation of contract breach and rejected it.

Further, to the extent that Sheehan Co. argues that Ceramic itself submitted documents acknowledging the breach, we find that unsupported by the record. The material referred to by Sheehan Co., the report of the Tile Council of America, found that, in fact, the tested tile's range of thickness complied with ANSI A137.1.

There was no error.

3. Without citing any authority, Sheehan Co. argues that the trial court erred in presumably holding that the second page of the Credit Application was binding on Sheehan Co.

As set out above, the first page of the application, which Brendan Sheehan signed, contained a sentence certifying, in bold capitalized print, that "we have read the *sellers terms and conditions listed* on this application and agree to be bound thereby." (Emphasis supplied.) On a second page there were listed 13 terms and conditions, including that all sums past due 30 days bore interest at 18 percent and that, in the event accounts were placed with an attorney for collection, the applicant agreed to pay attorney fees.

Sheehan Co. contends that Brendan Sheehan only received the first page of the application and not the second. To the extent that Sheehan Co. argues here for the first time that the terms and conditions were inherently conflicting and ambiguous, that argument was not made below and will not be considered here for the first time. It is axiomatic that matters neither raised nor ruled on below may not be considered on appeal. "We do not consider issues raised for the first time on appeal, because the trial court has not had opportunity to consider them." (Citation and punctuation omitted.) *Padilla v. Melendez*, 228 Ga. App. 460, 461 (1) (491 SE2d 905) (1997).

The construction of a contract is a question of law to be decided by the trial court. OCGA § 13-2-1. But "no construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation." (Citation omitted.) *Crooks v. Crim*, 159 Ga. App. 745, 748 (285 SE2d 84) (1981). Absent an ambiguity, "[p]arol evidence is inadmissible to add to, take from, or vary a written contract." OCGA § 13-2-2 (1).

Apparently, the trial court concluded that the language used on the first page of the credit application was sufficient to incorporate by reference the 13 terms and conditions contained on the second page

and did not consider Brendan Sheehan's statements disputing receipt of the second page.

> "As a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where . . . the provision to which reference is made has a reasonably clear and ascertainable meaning. (Cits.)" *Binswanger Glass Co. v. Beers Constr. Co.*, 141 Ga. App. 715, 717 (2) (234 SE2d 363) (1977). See also *Hartline-Thomas v. Arthur Pew Constr. Co., Inc.*, 151 Ga. App. 598, 599 (260 SE2d 744) (1979).

*Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 390 (1) (367 SE2d 278) (1988).

We agree with the trial court that the language was sufficient to incorporate the provisions of the second page. *Hembree v. Johnson*, 224 Ga. App. 680, 681 (1) (482 SE2d 407) (1997); *Charles S. Martin Distrib. Co. v. Bernhardt Furniture Co.*, 213 Ga. App. 481, 482-483 (1) (445 SE2d 297) (1994); *Consolidated Freightways Corp. &c. v. Syncroflo*, 164 Ga. App. 275, 276-277 (1) (294 SE2d 643) (1982).

We note further that Brendan Sheehan's lack of recollection of the receipt of the second page does not create a material question of fact in light of the incorporation by reference. *Charles S. Martin Distrib. Co.*, supra.

There was no error.

4. Sheehan Co.'s fourth enumeration, that the trial court erred in awarding attorney fees, is controlled by Division 3, supra.

5. Finally, Sheehan Co.'s fifth enumeration is that the trial court erred in granting summary judgment on the theory of open account.

This argument, however, is based on Sheehan Co.'s lack of acceptance of the tile, which, as pointed out in Division 1, supra, has been rejected. There was no error in granting summary judgment on an open account. *Imex Intl.*, supra.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED SEPTEMBER 15, 2004 —
RECONSIDERATION DENIED SEPTEMBER 30, 2004 — 

*Leonard W. Childs, Jr.*, for appellants.

*Shapiro, Fussell, Wedge, Smotherman, Martin & Price, J. Ben Shapiro, Jr., Ronald A. Williamson, Edward A. Stone*, for appellee.