## A08A1773. WOODEHAVEN TOWNEHOMES, INC.
## v. FERDINAND et al.
### (674 SE2d 384)

ADAMS, Judge.

Woodehaven Townehomes, Inc. appeals the superior court's order awarding the Georgia Department of Labor (the "Department") the excess funds from the 1999 tax sale of certain real property. We affirm because Woodehaven's claims of error are without merit.

This is the second time this case has appeared before this Court. Certain underlying facts and procedural history are set forth in our unpublished opinion in *Ga. Dept. of Labor v. Woodehaven Towne-homes*, 287 Ga. App. XXV (2007):

In 1999, Fulton County Tax Commissioner Arthur E. Ferdinand filed a petition to foreclose on certain property owned by Atlanta Neighborhood Housing Services, Inc. ("ANHS"); the Fulton County Tax Commissioner apparently was one of several creditors. The Department of Labor, represented by the State Attorney General's office, in the person of Assistant Attorney General Warren R. Calvert, filed an answer asserting the Department's claim to a portion of the proceeds due to delinquent taxes, penalties and interest owed by ANHS. Eventually the trial court entered an order authorizing the sale, and the sale went forward on March 7, 2000. After the Fulton County Tax Commissioner received what it was due, the sale resulted in excess funds, which were deposited with the Clerk of the Fulton County Superior Court.

On February 16, 2007, Woodehaven Townehomes, Inc., as successor in interest to ANHS, filed a motion for disbursal of the surplus funds, but it did not serve the Department of Labor through its attorney of record Calvert. Because it had recovered its due, the Tax Commissioner of Fulton County did not object, and, accordingly, the trial court entered a consent order disbursing the funds to Woodehaven.

The Department appealed on the grounds that the trial court's order violated OCGA § 9-10-2, requiring timely written notice to the Attorney General of certain judicial actions to which the State is a party. *Woodehaven*, supra. Woodehaven "join[ed] the Department of Labor in its request that the order be reversed and the case remanded so that the matter may continue with proper notice to all

parties." Id. We agreed and reversed, and the case was remanded to the trial court. Id.

On remand, the trial court entered its final order and judgment finding that there were no tax liens or recorded instruments with a higher priority than that of the Department, which was entitled to $28,687.18, plus interest, with the remainder of the excess funds to be disbursed to Woodehaven. Woodehaven appeals from that order.

1. In its initial claim of error, Woodehaven contends that "[t]his case must be dismissed under the five-year rule set out in [OCGA] §§ 9-2-60 (b)[1] and 9-11-41 (e)."[2] According to Woodehaven, there was no written order in this case during a five-year period following November 30, 1999, the date the trial court entered its order and judgment authorizing the Tax Commissioner to sell the property, and so the case must be deemed automatically dismissed by operation of law. A review of the record fails to show that Woodehaven made this argument to the trial court, suggesting that it waited until after an unfavorable disposition of its claim to raise the issue here. "We do not consider issues raised for the first time on appeal, because the trial court has not had [an] opportunity to consider them." (Citation and punctuation omitted.) *Dan J. Sheehan Co. v. Ceramic Technics, Ltd.*, 269 Ga. App. 773, 777 (3) (605 SE2d 375) (2004).[3]

2. On November 14, 2007, following motion by the Department, the trial court set a December 12, 2007 hearing date to determine which claimant was entitled to the excess funds and also ordered Woodehaven to redeposit the excess funds with the court registry within five days of the December 12, 2007 hearing. Woodehaven claims that the trial court erred in ordering it to return the excess funds without conducting a hearing. Woodehaven further contends that the trial court entered its November 14, 2007 order without affording Woodehaven "ample time to respond" to the Department's motion. We disagree.

This Court reversed the consent order under which the excess funds had been distributed to Woodehaven, thus removing the legal basis therefor. Upon remittitur, "[t]he decision and direction [of the

---

[1] "Any action or other proceeding filed in any of the courts of this state in which no written order is taken for a period of five years shall automatically stand dismissed with costs to be taxed against the party plaintiff." OCGA § 9-2-60 (b).

[2] "Any action in which no written order is taken for a period of five years shall automatically stand dismissed, with costs to be taxed against the party plaintiff." OCGA § 9-11-41 (e).

[3] Even if Woodehaven had raised the issue below, the five-year rule is not implicated. The tax sale to which the 1999 order pertained was completed in 2000. "Th[e] five-year rule . . . applies to cases awaiting disposition, not to cases already adjudicated by verdict or judgment." *Lott v. Arrington & Hollowell, P.C.*, 258 Ga. App. 51, 55 (2) (b) (572 SE2d 664) (2002). This action arose on February 16, 2007, when Woodehaven asserted its claim under authority of OCGA § 48-4-81 (f), which contemplates the post-foreclosure distribution of surplus funds.

appellate court] shall be respected and carried into full effect in good faith by the court below." OCGA § 5-6-10. Woodehaven fails to show why it was entitled to retain the excess funds without having established its claim to those monies, nor does Woodehaven cite a single legal authority to support its argument that either a hearing or "ample notice" was required before the trial court could order the return of the funds.[4] See Court of Appeals Rule 25 (a) (3) (the brief of appellant shall include "supporting authority for each issue presented in the brief"). Accordingly, Woodehaven fails to show error.[5]

3. Woodehaven claims the trial court erred in setting out three findings of fact that were not supported by the record and asks that we reverse and remand for further findings. First, Woodehaven points to the trial court's finding that "[t]he Tax Commissioner conducted the sale of the Subject Property owned by Atlanta Neighborhood Housing Services, Inc., on March 7, 2000." Second, Woodehaven points to the trial court's finding that Providence Properties presented the highest bid of $37,000, resulting in excess funds of $29,910.53, and that those funds were deposited with the Clerk of the Superior Court of Fulton County. Third, Woodehaven shows that the trial court referred to its November 5, 2003, "Standing Order Designating the In Rem Tax Sale Excess Fund Application Process."

At best, this claim of error is misplaced. Woodehaven points to the alleged unsupported findings and, without further argument and without citation to legal authority, asserts that they require reversal. Yet we need only look to Woodehaven's own motion for disbursal of surplus funds, verified under oath as "true and correct" by the president thereof, to see the following: "2. On March 7, 2000, the Tax Commissioner of Fulton County held a judicial tax sale of the subject property."; "4. Providence Properties, Inc., pursuant to [OCGA §] 48-4-64 (e) was the successful bidder of $37,000.00 at the tax sale."; "5. There are surplus funds deposited into the registry of this Court by the Tax Commissioner in the amount of $29,910.53."; "6. Atlanta Neighborhood Housing Services, Inc., acquired title to the subject property by [a deed] dated September 4, 1990. . . ." Accordingly, the first two findings of the trial court challenged by Woodehaven are

---

[4] Woodehaven also points out that the trial court's November 14, 2007 order was apparently prepared by an attorney acting for the Tax Commissioner. It claims "questions" therefore arise. That these alleged questions lead to a legal argument showing error by the trial court is not demonstrated by Woodehaven.

[5] Furthermore, Woodehaven refused to pay the money into the registry of the court, as it had been ordered to do, but was nevertheless heard at the December 12, 2007 hearing. The trial court again ordered the excess funds to be repaid by Woodehaven in its final order.

supported by the record. In addition, to the extent the trial court's findings are also reflected in the opinion of this Court in *Woodehaven*, supra, "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." OCGA § 9-11-60 (h).

As to the third assertion, the standing order referred to by the trial court was not filed of record in this case. As a rule, however, "[a] trial court may take judicial cognizance, as did the judge here, of records on file in its own court." (Citation and punctuation omitted.) *Baez v. Miller*, 266 Ga. 211 (465 SE2d 671) (1996). Thus, we conclude that Woodehaven cannot show reversible error merely because the trial court referenced an order on file in its own court.

4. Woodehaven further claims that the trial court erred in not holding an evidentiary hearing before entering its order finding that the Department was entitled to the surplus funds. In this regard, he complains that the Department's liens were not certified, and that although the Department moved to draw down funds, there were no funds in the registry of the court for the Department to draw down. Again, Woodehaven cites no legal authority to support these arguments.

The record shows that in its motion to withdraw funds, the Department argued that it had priority to the surplus funds in light of numerous liens recorded by the Department on the general execution docket of the Superior Court of Fulton County. The Department attached copies of the liens to its motion, with the recording information set forth on the face thereof. Woodehaven responded on the merits and argued that the enforcement of the Department's liens was time-barred but did not assert that the Department's liens were insufficiently authenticated. As indicated in its final order, the trial court then held a hearing and issued the order upon consideration of the arguments and submissions of counsel.

Thus, it appears from the record that the trial court held a hearing and that Woodehaven was afforded an opportunity to be heard on the merits. But because Woodehaven fails to show that it claimed that the Department's liens were not properly authenticated, we discern no error as to procedure or the trial court's consideration of the Department's liens. See generally *Colon v. State*, 275 Ga. App. 73, 79 (4) (619 SE2d 773) (2005) ("an objection different from that made below may not be urged on appeal"). Further, no transcript of the hearing was submitted for our consideration. See *Crawford v. Dammann*, 277 Ga. App. 442, 452 (4) (b) (626 SE2d 632) (2006) ("[i]n its order granting a default judgment, the trial court specifically recited that it considered the arguments

and submissions of counsel in finding that cross-appellants had not made a proper case for opening the default. Such a finding cannot be assailed absent a transcript").

Woodehaven's argument as to the lack of excess funds in the court's registry is somewhat disingenuous. The location of the excess funds was not determinative of the issue of which party was entitled to the funds. Ultimately, there would have been funds to withdraw from the court's registry if Woodehaven had complied with the trial court's order directing that such funds be returned.

5. OCGA § 48-4-81 (e) provides that "[w]ithin 90 days following the date of the sale, the petitioner shall file a report of the sale with the superior court, which report shall identify whether a sale took place, the foreclosure sale price, and the identity of the purchaser." Woodehaven claims that the tax commissioner did not file this report following the tax sale, and that in the report's absence the trial court could not "know what is at stake in the matter," and reversal is therefore required. However, the trial court had the information which would have been included in the report contemplated by OCGA § 48-4-81 (e). As shown by our findings in Division 3, supra, Woodehaven supplied the information in its verified claim for disbursal of the surplus funds. Apart from questioning whether the trial court could know "what is at stake," Woodehaven fails to show how the failure of the Tax Commissioner to file the report warrants reversal here. Woodehaven also fails to show it raised this issue before the trial court. We find no error.

6. Lastly, Woodehaven suggests that its own appeal was premature because although the trial court's order is denominated a "Final Order and Judgment" which "shall constitute a final order in this case," there remained an outstanding claim that had not been ruled on by the trial court. Specifically, Woodehaven shows that the Department asked that it be awarded $262 for the costs involved in the initial appeal of this case under authority of OCGA § 5-6-5, and that this claim was not addressed in the trial court's final order. Woodehaven argues that the trial court's order was not final because the Department's claim remained outstanding and because the trial court failed to make an express determination that there was no just reason for delay. See OCGA § 9-11-54; *Rhymes v. East Atlanta Church of God, Inc.*, 284 Ga. 145 (663 SE2d 670) (2008). We disagree.

Pursuant to OCGA § 5-6-5, "[i]f there is a judgment of reversal, the appellant shall be entitled to a judgment for the amount of the costs in the appellate court against the appellee as soon as the remittitur is returned to the court below." The Department's entitlement to these costs is related to the disposition of its previous appeal, and as such is ancillary to that appeal. The right to judgment arises "as soon as the remittitur is returned." Id. Further, the right to

judgment is ripe for satisfaction notwithstanding whether the case continues below following the reversal of the appealed judgment. See *Paul v. Jones*, 160 Ga. App. 671, 674-675 (3) (288 SE2d 13) (1981). Indeed, the computation of the costs in the previous appeal and the right to payment therefor are necessarily matters independent from the merits of the underlying action, should they remain to be determined. Accordingly, we find that the Department's request for a judgment under authority of OCGA § 5-6-5 was not a "claim for relief . . . presented in [the] action" for purposes of OCGA § 9-11-54 (b).[6] Rather, "judged by its function and substance," *Rhymes*, supra, 284 Ga. at 146, the trial court's order is final and directly appealable for purposes of OCGA § 5-6-34 (a) (1).

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 27, 2009.

*Graydon W. Florence, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Warren R. Calvert, Senior Assistant Attorney General, Michele M. Young, Denval A. Stewart, Assistant Attorneys General*, for appellees.

---

[6] For comparison, we note that a claim for fees and expenses may arise after final judgment and would not preclude final disposition of the case. See, e.g., OCGA § 9-15-14 (e) ("[a]ttorney's fees and expenses under this Code section may be requested . . . not later than 45 days *after* the final disposition of the action") (emphasis supplied).