**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 15, 2022**

# In the Court of Appeals of Georgia

A22A0063. BIRCH PROPERTY PARTNERS, LLC et al. v. SIMPSON.

A22A0064. SIMPSON et al. v. HUSFELD.

MILLER, Presiding Judge.

These two appeals stem from the faulty construction of a home. After a bench trial, the trial court entered judgment in favor of the homeowner plaintiffs, Brian and Shannon Simpson, on their claims for breach of contract and breach of warranty against the builder, Birch Property Partners, LLC ("Birch Properties"). The Simpsons also filed a negligent construction claim against Greg Husfeld, the owner and operator of Birch Properties, but the trial court found in Husfeld's favor on this claim. In Case No. A22A0063, Birch Properties appeals from the trial court's judgment, arguing that (1) the trial court erred by failing to make findings of specific damages;

(2) the trial court erred by awarding excessive damages; (3) the trial court erred by failing to make findings on its counterclaims; (4) the trial court erred by allowing certain expert testimony; (5) the Simpsons waived their claim for damages to the driveway by making modifications; and (6) the trial court erred by awarding attorney fees to the Simpsons. In Case No. A22A0064, the Simpsons cross-appeal from the trial court's judgment, contending that the trial court erred because it did not enter a judgment against Greg Husfeld in his individual capacity.

In Case No. A22A0063, we affirm the trial court's damages award to the Simpsons, but we reverse the lump sum award of attorney fees and remand this case for an evidentiary hearing to allow the Simpsons to segregate the number of hours that were allocated to their successful claims. In Case No. A22A0064, we affirm the trial court's judgment in Husfeld's favor.

"Where the trial court is the finder of fact, it determines weight, credibility, opinion evidence, sufficiency, and admissibility of all evidence; if there is any evidence to support the judgment, it must be affirmed." *Rice v. Lost Mountain Homeowners Assn., Inc.*, 269 Ga. App. 351, 357 (7) (604 SE2d 215) (2004). And "[w]here, as here, the parties do not request, and the trial court does not make, written findings of fact, any enumeration of error that would require consideration of a

2

finding of fact cannot be reviewed on appeal. We review questions of law de novo."

*Gateway Community Svc. Bd. v. Bonati*, 346 Ga. App. 653 (816 SE2d 743) (2018).

In April 2016, the Simpsons and Birch Properties executed an agreement for the construction of a home on a property in Hoschton, Georgia. The initial cost of the construction was $297,900, and the parties later amended the contract to reflect a revised total of $326,324.56. The Simpsons moved into the home around December 12, 2016. Approximately three weeks later, on January 6, 2017, Shannon Simpson sent a "punch list" to Birch Properties, itemizing various construction issues that needed to be addressed. Husfeld responded, "Got it. I will get these items scheduled and let you know when."

In April 2017, after no repairs had been completed, the Simpsons hired a structural engineer, Maureen Davis, to conduct a limited inspection of the home. Davis inspects commercial and residential buildings for construction defects and code compliance. In a detailed report, she identified, itemized, and included photographs of numerous areas of concern with the home. Ultimately, Davis' professional opinion was that the home had been improperly constructed, that "distress [was] manifesting itself throughout the home," and that several defects needed to be repaired. In a letter dated May 15, 2017, Brian Simpson requested a "plan of action" from Birch

3

Properties, and he also sent a copy of Davis' report. Thereafter, the Simpsons and Birch Properties continued discussions regarding repairs at the property, but in July 2017, the Simpsons requested that Birch Properties cease attempts to continue work on the property.

The Simpsons filed suit against Birch Properties for breach of contract and breach of warranty, and they also filed a negligent construction claim against Husfeld in his individual capacity. The Simpsons further requested attorney fees under OCGA § 13-6-11 on the basis that the defendants had acted in bad faith, had been stubbornly litigious, and had caused them unnecessary trouble and expense. Husfeld counterclaimed for attorney fees and litigation expenses on the basis that the claim against him was frivolous and lacked substantial justification. Birch Properties counterclaimed for wrongful attempted termination of contract, breach of contract, and attorney fees.

At the ensuing bench trial, Davis was admitted as an expert witness and provided extensive testimony on the specific major repairs required. There were large gaps in the wood flooring, and when she reinspected the home in 2020, portions of the flooring had delaminated from the concrete surface and parts of the floor were "popping." Davis testified that the flooring had not been properly installed and that

4

the concrete surface was not adequately "prepped" before the wood was laid down. In her view, the flooring needed to be removed and reinstalled. Additionally, Davis observed that the driveway was improperly sloped, which was causing drainage issues and damage to the concrete. In her opinion, the driveway did not meet industry standards, and portions of the driveway needed to be replaced. Next, although the plans for the home included a foundation drainage system, it had not been installed. The drainage from the roof presented a code violation in that the "roof runoff" was not sufficiently extended which led to the over-saturation of the soil adjacent to the foundation of the home.

Davis further observed decay in the exterior trim and that water was not being adequately drained from the siding of the home, and she determined that the siding had to be removed. She also testified that while the plans for the garage called for steel I-beams, Birch Properties had downgraded to laminated veneer lumber beams. Because of the "end bearing" of these beams, there was distress in the rear wall, and upon her reinspection of the home in 2020, Davis saw that the cracks in the wall were expanding and impacting the operation of the windows in the garage. In order to remedy these issues, the wall cavities had to be opened, the sheetrock needed to be replaced, the window frames required readjusting, and the windows needed to be

reset. Additionally, the quality of the stonework on the exterior of the home was poor, there were clumps of mortar in the stonework, and "many of the penetrations through the stone veneer" had not been sealed. Davis then testified about the attic, explaining that the home did not satisfy "the conditions of the building code" because there was no unobstructed path to the furnace equipment. Therefore, the ductwork needed to be relocated or the furnace itself had to be moved. Ultimately, Davis opined that Birch Properties was required to comply with the plans and specifications for the home, abide by industry standards and building codes, and perform the work in a "good and workmanlike manner." In her opinion, however, Birth Properties failed to meet the standard of care with regard to the defects to which she had testified.

Davis also testified to a host of miscellaneous concerns with the interior and exterior of the home, including the improper placement of the laundry room sink; misaligned kitchen cabinets; an improperly installed pocket door; drywall distress in the bathroom; a damaged patio door; and a condensate line that allowed water to drain directly onto the foundation, which can weaken the foundation of the home. Davis opined, however, that she did not view these miscellaneous items to be construction defects; rather, some of the items were important to the Simpsons and others reflected quality issues. Based on Davis' report, Tom Hordos of Creative Edge

Construction prepared an estimate for all of the repairs, which amounted to $216,798. Hordos, who was also admitted as an expert witness at trial, agreed that Birch Properties failed to build the home using the quality and standard of care typically used in the area for finishing homes. Birch Properties' expert proposed alternative repairs to those listed in Davis' report and testified that some of the repairs were not needed. In Husfeld's estimation, the repairs in Davis' report amounted to $15,000.

The trial court entered a "final order and judgment" solely addressing the Simpsons' claims and awarding them $156,620 on their breach of contract and breach of warranty claims and $21,679.28 in attorney fees. As to the negligent construction claim against Husfeld in his personal capacity, the trial court found in Husfeld's favor. The trial court determined that "there [was] no just reason to delay an entry of judgment against [Birch Properties]" and directed the entry of judgment for the Simpsons. Birch Properties filed a timely notice of appeal, and the Simpsons cross-appealed.

*Case No. A22A0063*

1. First, Birch Properties argues that the trial court erred because it failed to make specific findings regarding the amount of repair costs awarded for each construction defect. Birch Properties suggests that this omission means that the

7

judgment was based on speculation, conjecture, and guesswork. We conclude that the absence of specific findings in the trial court's judgment does not warrant reversal.

"[D]amages must be reasonable and proven in a manner sufficient to allow the fact finder to estimate them with reasonable certainty free from speculation, conjecture and guesswork." (Citation and punctuation omitted.) *John Thurmond & Assoc., Inc. v. Kennedy*, 284 Ga. 469, 473 (2) (668 SE2d 666) (2008).

The fact that the trial court entered an aggregate amount of damages in this case was not error because the evidence enabled the trial court to determine the amount of damages with reasonable certainty. Based on all the items detailed in Davis' inspection report, Hordos submitted an itemized estimate for the repairs that listed the cost to fix each issue. Hordos testified extensively regarding the requirements of each repair, and the estimate was entered into evidence. To be sure, Davis opined that none of the miscellaneous interior and exterior items included in her report constituted construction defects. She also appeared skeptical of Hordos' quote for "roof work," which amounted to $11,040, because she never observed an ongoing leak in the roof. Nevertheless, even subtracting the entire proposed amounts for the miscellaneous items and the "roof work," the estimate for the remaining major projects would have amounted to $167,928. Therefore, the trial court's aggregate

8

judgment amount of $156,620 was within the range of evidence that was presented on damages for the major projects that Davis testified needed to be completed, and given the clear and specific evidence of the cost of each repair, we cannot say that the judgment amount resulted from "speculation and guesswork."[1] See *Dossie v. Sherwood*, 308 Ga. App. 185, 187-189 (707 SE2d 131) (2011) (although the jury did not segregate its damages award, the award was not based on "speculation and guesswork" because it fell within the range of evidence presented); *Gipson v. Phillips*, 232 Ga. App. 235, 236 (501 SE2d 570) (1998) (lump sum verdict was "within the range of the evidence at trial which showed property damage to the van, medical bills, pain and suffering, and [the plaintiff's] inability to work around the house and yard and care for the animals").

---

[1] Of the major repairs, Davis and Hordos had a difference of opinion on the estimates for the driveway and the roof drainage issues. Nevertheless, the trial court was certainly entitled to credit Hordos' testimony as to the repairs needed for the driveway, *Rafferzeder v. Zellner*, 272 Ga. App. 728, 730 (1) (613 SE2d 229) (2005), and Birch Properties has not identified evidence that Hordos' solution for the roof drainage issues was unreasonably expensive. Also, while Davis recommended "flashing" certain areas in the stone veneer outside the home, she conceded that if removal of the stones was deemed necessary, then Hordos would have attributed a cost for this removal, which he did.

Insofar as Birch Properties desired for the trial court to enter findings of fact and conclusions of law, Birch Properties failed to make this request either before or after the entry of the judgment, as authorized by OCGA § 9-11-52 (a), (c). Although Birch Properties claims that it was unable to insist on findings of fact and conclusions of law because the trial court entered the judgment three weeks after the trial, nothing prevented Birch Properties from requesting specific damages before or during the trial under OCGA § 9-11-52 (a) or filing a post-judgment request under OCGA § 9-11-52 (c) following the entry of the trial court's written judgment. See *Payson v. Payson*, 274 Ga. 231, 234 (2) (552 SE2d 839) (2001) (construing OCGA § 9-11-52 (c) and concluding that the time to file such a request runs from the entry of the trial court's written judgment after a bench trial). Accordingly, this enumeration of error lacks merit.[2]

2. Next, Birch Properties argues that the damages award was excessive and unreasonable, and the award should have instead been limited to the difference

---

[2] Birch Properties claims that, given the form of the trial court's judgment, there is no telling whether the trial court considered its counterclaims. This argument is addressed below, as part of our determination that Birch Properties' counterclaims remain pending.

between the fair market value of the house as contracted and the fair market value of the house as constructed. These arguments are not meritorious.

A fact finder is "given wide latitude in determining the amount of damages to be awarded based on the unique facts of each case." *John Thurmond & Assoc., Inc.*, supra, 284 Ga. at 469 (1). "As a general rule, damages for defective construction . . . are determined by measuring the cost of repairing or restoring the damage, unless the cost of repair is disproportionate to the property's probable loss of value." (Citation omitted.) Id. at 470 (1). "[P]roof of the cost of repair because of the defective construction . . . is more likely to represent the true damage suffered from the failure of a contractor to complete his contract than would the opinion of an expert as to the difference in values." (Citation omitted.) Id. In any event, cost of repair and diminution in value are *alternative* measures of damages, and an injured party may choose to present their case using either method. Id. at 471 (1). Whether the facts justify the application of the rule permitting recovery for the reasonable cost of repairs "is a question ordinarily determined by the trial court based on the varying facts and circumstances of each case." Id. n.3.

(a) We first address Birch Properties' argument that the award to the Simpsons was 66% of the contract price and that the Simpsons were therefore unjustly enriched by the award, and that Birch Properties was unable to make a reasonable profit.

"[T]his Court will not disturb a damages award unless it is so flagrant as to shock the conscience." *Cavin v. Powell*, 276 Ga. App. 60, 61 (1) (622 SE2d 415) (2005). Our Supreme Court has also cautioned against the application of any rule that functions to "mechanically limit" damages. *John Thurmond & Assoc., Inc.*, supra, 284 Ga. at 473 (2). For instance, there is no "immutable rule that damages may never exceed the fair market value of the property." Id. Instead, the general principle is that "the cost of repair must be reasonable and bear some proportion to the injury sustained." (Citation omitted.) Id. at 474 (2) n.5. "[T]he method of calculating damages should be flexible so as to reasonably compensate the injured party, and at the same time, be fair to all litigants." Id. at 473 (2).

Here, Hordos testified that it is generally more expensive to remodel or "rework" a home than it is to construct a home.[3] Davis agreed, attesting that "there is a big difference between new construction cost[s] and remediation and repair costs

---

[3] Also, Hordos prepared an initial estimate but then revised it to $216,798 because the COVID pandemic had caused an increase in the cost of supplies and labor.

12

because of the nature of the damage and the methods needed to conduct the repairs."

She testified that, for all the repairs indicated in her report, an estimate of $170,000 was "probably the worst case scenario." Hordos later testified in detail regarding the requirements of all the major repairs, which, per his prepared estimate, amounted to $167,928. First, the entire driveway had to be removed because it was placed in the wrong area, it was incorrectly installed "as a whole," and it could not be repaired in portions. Regarding the roof drainage, he testified that downspouts and gutters had to be removed and repitched, tubing had to placed into the ground to facilitate the drainage, and then the area needed to be regraded. Further, there were "a lot of structural issues" with the garage, and repairing it required building temporary walls to hold up the structure, tearing out the drywall, reframing the garage, and reinstalling the insulation. Hordos testified that preparation for the garage work would be "very time-consuming" and the work "intensive" because the walls in the garage impacted the entire structure of the home. In his view, the wood flooring was not level, he could not "patchwork it," and the entire flooring had to be removed. He added that the glue needed to be scraped from the concrete, the area needed to be sanded, and new flooring needed to be reinstalled. Hordos further testified at length on the repairs required for the trim and siding, the stonework around the home, and the attic. When

13

we consider Davis' inspection report and the testimony regarding the extent and the intricacy of the repairs required, we conclude that the cost of repairs was reasonable and bore some proportion to the Simpsons' injury. The judgment amount was needed to restore the Simpsons to the position that they would have been in had Birch Properties properly constructed the house, and the award of $156,620 was not flagrantly excessive.

(b) Second, Birch Properties supposes that because the Simpsons have not yet made any repairs to the home, they will not complete all of the repairs for which they claimed damages, and therefore they will receive a windfall for items that may never be remedied.

It is axiomatic that "[t]his Court will not reverse cases based on speculation[.]" *In re Estate of Dunn*, 236 Ga. App. 211, 212 (1) (b) (511 SE2d 575) (1999). As the appellant, Birch Properties bears the burden of demonstrating reversible error from the record, and Birch Properties identifies no evidence that the Simpsons do not intend to have the repairs performed. On the contrary, Shannon Simpson plainly testified that she was seeking damages in order to make the necessary repairs. Therefore, this argument is unavailing.

14

(c) Next, Birch Properties argues that the Simpsons have benefitted from living in the home for four years while making no repairs, and therefore the damages award places them in a better financial position than if the contract had not been breached. This assertion is untenable under the law.

The Simpsons were entitled to have the home that they contracted for in the first place. *Savannah Indus. Constr. & Equip. Rental, Inc. v. Sumner*, 189 Ga. App. 319, 320 (375 SE2d 486) (1988). Had they received the home that was promised under the contract, they would have conceivably been living in it all along, except that it would have been properly constructed. In other words, the Simpsons should have been able to occupy a properly constructed home from the very beginning. Therefore, the award of damages is "intended to place [the Simpsons], as nearly as possible, in the same position they would have been if the injury had never occurred." *John Thurmond & Assoc., Inc.*, supra, 284 Ga. at 469 (1). Accordingly, we reject the argument that the award places the Simpsons in a better financial position than if the contract had not been breached.

(d) Lastly, Birch Properties argues that, instead of using the cost of the repairs, the trial court should have measured the damages by assessing the difference in the value of the home as contracted and the probable value of the home as constructed

15

(the probable loss in value of the home). We disagree because Birch Properties failed to present any evidence on this issue.

After a plaintiff produces evidence supporting a claim for damages under the cost of repair method, "the defendant has the burden to present any contradictory evidence challenging the reasonableness or proportionality of those damages and where appropriate, evidence of an alternative measure of damages for the [fact-finder's] consideration." *John Thurmond & Assoc., Inc.*, supra, 284 Ga. at 471 (1). To this end, the burden is on the contractor guilty of the breach to prove that the "award of repair costs constitutes economic waste." (Citation omitted.) Id. Also, whether the repair of a home is an "absurd undertaking" is a question to be resolved by the fact finder. (Citation omitted.) Id.

Insofar as Birch Properties now urges that the trial court should have awarded damages by measuring the diminution in the value of the property, Birch Properties bore the burden to provide evidence on this issue. In its appellate brief, however, Birch Properties cites no evidence whatsoever regarding the probable loss in the value of the home. In fact, Birch Properties explicitly states that the value of the home as constructed is unknown. At trial, Birch Properties' position was largely that the repairs could be completed for significantly less than Hordos' proposed estimate, not

16

that the trial court should consider the diminished value of the property as a measure of damages. Compare *City of Atlanta v. Conner*, 262 Ga. App. 423, 424-425 (585 SE2d 634) (2003) (trial court erred in using the cost of repairs as the measure of damages where both parties agreed that the house was not salvageable and that it was impracticable to repair it). Thus, Birch Properties failed to carry its burden of presenting evidence of an alternative measure of damages for the trial court's consideration, and we have no reason to disturb the trial court's damages award.

3. Next, Birch Properties argues that the trial court erred by failing to make findings or enter any "verdict" on its counterclaims. A review of the record, however, shows that the trial court properly finalized its judgment as to the Simpsons' complaint and that Birch Properties' counterclaims remain pending.

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

OCGA § 9-11-54 (b). This statute "expressly applies to both claims and counterclaims." *Coxwell Tractor & Equip. Sales, Inc. v. Burgess*, 192 Ga. App. 663,

17

664 (2) (385 SE2d 753) (1989). Here, the trial court expressly determined that there was no just reason for delay and directed the entry of a final judgment solely on the Simpsons' claims. We are aware of no authority — and Birch Properties has not identified any — which prevents a trial court from certifying its judgment under OCGA § 9-11-54 (b) after a bench trial. See, e.g., *Underwood v. Dunn*, 215 Ga. App. 252 (451 SE2d 129) (1994) (case remained pending below after the bench trial partly because the trial court did not direct the entry of a final judgment under OCGA § 9-11-54 (b)). Indeed, the very reason that we have jurisdiction over Birch Properties' direct appeal is because the trial court lawfully finalized the judgment as to the Simpsons' complaint. *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693, 695 (1) (527 SE2d 293) (1999).

Relatedly, we reject Birch Properties' argument that the trial court's "verdict" ran afoul of OCGA § 9-12-1 because it did not resolve all the issues in the case. OCGA § 9-12-1 provides that "[t]he verdict shall cover the issues made by the pleadings and shall be for the plaintiff or for the defendant." We have long held, however, that "there is no verdict in a bench trial." *Meacham v. Franklin-Heard County Water Auth.*, 302 Ga. App. 69, 74 (1) (690 SE2d 186) (2009). Compare *Bernath Barrel & Drum Co., Inc. v. Ostrum Boiler Svc., Inc.*, 131 Ga. App. 140, 144

18

(1) (205 SE2d 459) (1974) (where the jury entered a verdict for the plaintiff in the sum sued for and did not reference the counterclaim, the verdict was to be construed as deciding against the defendant's counterclaim) (physical precedent only). Thus, insofar as Birch Properties contends that the trial court's judgment is statutorily deficient under OCGA § 9-12-1, this claim necessarily fails.

Third, a review of the record shows that Birch Properties' counterclaims are still pending because the trial court has not ruled on them. Birch Properties counterclaimed for the wrongful attempted termination of contract, breach of contract, and attorney fees. Specifically, Birch Properties claimed that the Simpsons prevented the company from completing the full performance of its obligations and failed to pay for additional modifications in the amount of $26,342.45.[4] At trial, the trial court explicitly referenced and took evidence on the counterclaims. Its judgment, however, makes no mention of the counterclaims. Although a trial court can *implicitly* reject a counterclaim, there is nothing in the judgment that automatically precludes all of Birch Properties' counterclaims. For instance, although the trial court awarded

_____

[4] Although the Simpsons argue that the counterclaims are not credible, the viability of the counterclaims has no bearing on the fact that they remain pending until a ruling is obtained. *Yates v. CACV of Colorado, LLC*, 295 Ga. App. 69, 69-70 (670 SE2d 884) (2008) (counterclaim was pending regardless of whether it was without merit, procedurally unauthorized, abandoned, or waived).

19

the Simpsons damages on their breach of contract claim, this did not preclude Birch Properties' counterclaim for breach of contract. It is entirely possible for *both* parties to not fulfill their obligations under a construction contract. See *Dill v. Chastain*, 234 Ga. App. 770, 771 (507 SE2d 872) (1998). And, the trial court's designation of the judgment as "final" does not mean that the counterclaims were necessarily adjudicated. *Rhymes v. East Atlanta Church Of God, Inc.*, 284 Ga. 145, 146-147 (663 SE2d 670) (2008). Thus, we cannot presume that the trial court disposed of the counterclaims when nothing in the judgment expressly or impliedly shows that these claims were resolved. Id. at 146 (other claims were still pending where "[n]othing in [the] order expressly, or by necessary implication, constitute[d] an adjudication of the other claims"). Compare *Mancuso v. Jackson*, 359 Ga. App. 428, 430 n.3 (858 SE2d 244) (2021) (trial court specifically mentioned counterclaims in its order and made findings that precluded the counterclaims); *Mosley v. Loan Servicing Enterprise*, 241 Ga. App. 182 (525 SE2d 381) (1999) (apparent from the order that the trial court considered the counterclaim). Accordingly, Birch Properties' counterclaims remain

20

pending, and we have no cause to reverse the trial court's order on the basis that it failed to address them.[5]

4. Next, Birch Properties argues that the trial court erred by allowing expert testimony from Hordos because much of his testimony on the specific repair amounts was based on conversations with subcontractors, and he was merely a conduit for the opinions of other individuals. This argument fails because even if this testimony was inadmissible, Birch Properties' substantial rights were not affected.

We are cognizant that "[a] witness' opinion must be his own and he cannot act as a mere conduit for the opinions of others." (Citation omitted.) *Unified Govt. of Athens-Clarke County v. Watson*, 255 Ga. App. 1, 4 (2) (564 SE2d 453) (2002). Nevertheless, "[u]nder the new Rules of Evidence, if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible." *Torres v. City of Jonesboro*, 354 Ga. App. 874, 876 (2) (842 SE2d 75) (2020) (citing OCGA § 24-8-802). "The contemporaneous objection rule provides that counsel must take exception to the alleged error at the

---

[5] We also note that the judgment does not mention Husfeld's counterclaim. Husfeld claimed that the action against him in his individual capacity lacked substantial justification, and, as mentioned above, the trial court found in Husfeld's favor on the negligent construction claim.

*earliest possible opportunity* in the progress of the case by a proper objection made a part of the record." (Citation and punctuation omitted; emphasis in original.) Id. See also *Firmani v. Dar-Court Builders, LLC*, 339 Ga. App. 413, 421 (2) (793 SE2d 596) (2016) (to preserve an issue for appeal, a party must make a timely motion or objection that is contemporaneous with the introduction of the evidence). Birch Properties did not object to Hordos' testimony on the quoted amounts in the estimate. Therefore, Birch Properties has forfeited ordinary review of this claim.

Further, although plain error review applies to evidentiary errors in civil cases, *Thomas v. Alligood*, 358 Ga. App. 703, 712 (2) (b) (856 SE2d 80) (2021), Birch Properties does not demonstrate plain error based on the admission of Hordos' testimony.

> In order to demonstrate plain error based upon the admission of evidence, an appellant must show an error or defect that has not been affirmatively waived by the appellant, that is clear or obvious, and that affected the appellant's substantial rights by affecting the outcome of the trial court proceedings; if these three requirements are satisfied, we have the discretion to remedy the error but should do so only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Id.* at (2) (c). Here, when the Simpsons moved to admit the exhibit depicting Hordos' estimate for the repairs, counsel for Birch Properties saw the estimate and *twice* stated, "I'm not going to object." Therefore, there was no plain error in the admission of the exhibit itself. *McAllister v. State*, 351 Ga. App. 76, 88 (3) (830 SE2d 443) (2019) (plain error was inapplicable where counsel saw the exhibits and twice stated that he had no objection to either exhibit). Accordingly, even if Hordos' testimony as to the specific repair amounts was inadmissible, the estimate was properly included in the evidence for the trial court's consideration, and Hordos opined that all of the itemized repairs stemmed from substandard construction. Therefore, Hordos' testimony did not affect Birch Properties' substantial rights, and there is no basis to disturb the trial court's judgment based on Hordos' expert testimony. See *Thomas*, supra, 358 Ga. App. at 712 (2) (c) (explaining that "because civil cases do not ordinarily invoke the violation of a constitutional right or the denial of liberty it is far less likely that plain error will be identified in the civil context") (citation and punctuation omitted).

5. Next, Birch Properties argues that the Simpsons waived their claim for damages to the driveway because they modified it. In Birch Properties' view, the Simpsons intentionally poured additional concrete that matched the elevation of the

23

existing driveway, which prevented Birch Properties from removing the driveway and made it more expensive for Birch Properties to make the necessary repairs.[6] We conclude that the Simpsons did not waive their claim as to the driveway.

> It is well recognized that a party to a contract may waive contractual provisions for his benefit. A waiver may be shown through a party's conduct. But the law will not infer the waiver of an important contract right unless the waiver is clear and unmistakable. And because waiver is not favored under the law, the evidence relied upon to prove a waiver must be so clearly indicative of an intent to relinquish a then known particular right or benefit as to exclude any other reasonable explanation. Indeed, all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist. The burden of proof lies with the party asserting waiver.

---

[6] Birch Properties apparently makes a fleeting argument that the Simpsons accepted the driveway as constructed and that acceptance of goods with knowledge of defects constitutes a waiver of the warranty. Assuming that this principle even applies in construction defect cases, the cases on which Birch Properties relies pre-date statutory law on this issue. Under current law, "a buyer can recover damages for breach of warranty or breach of contract even though the buyer accepted the defective goods," provided that the buyer reasonably notifies the seller of the defects, in compliance with statute. *Atwood v. Southeast Bedding Co., Inc.*, 226 Ga. App. 50, 52 (1) (485 SE2d 217) (1997) (citing OCGA §§ 11-2-607 (3) (a), 11-2-714). Here, within weeks of moving into the home, the Simpsons notified Birch Properties, in writing, of multiple issues with the driveway. Absent any argument from Birch Properties, we have no reason to believe that the Simpsons' notice to Birch Properties was insufficient so as to bar recovery as to the driveway.

24

(Citation omitted.) *Ochoa v. Coldwater Creek Homeowners Assn. Inc.*, 361 Ga. App. 267, 270 (1) (863 SE2d 730) (2021). The record in this case does not show that the Simpsons clearly and unmistakably relinquished a right to claim damages for the driveway. Brian Simpson testified that he did not make any changes to the original driveway, that he poured concrete *adjacent* to the driveway, and that he did not know whether the additional concrete was poured to the same elevation as the existing driveway. In essence, Birch Properties has not demonstrated that Simpson knew that, by pouring concrete adjacent to the existing driveway, he would potentially prevent Birch Properties from removing the existing driveway or make it more expensive for Birch Properties to make the necessary repairs. See *Ochoa*, supra, 361 Ga. App. at 270 (1) ("Where the only evidence of an intention to waive is what a party does [], there is no waiver unless his acts . . . are so *manifestly consistent* with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of the conduct is possible.") (citation omitted; emphasis supplied).

6. Lastly, Birch Properties argues that the trial court erred by awarding attorney fees to the Simpsons under OCGA § 13-6-11. We conclude that the evidence authorized the trial court to grant an attorney fee award under OCGA § 13-6-11, but that the trial court's decision to award the fees in a lump sum amount was error.

25

"Attorney fees are recoverable under OCGA § 13-6-11 when a party has acted in bad faith, has been stubbornly litigious, or has subjected the other party to unnecessary trouble and expense." (Citation omitted.) *City of Lilburn v. Astra Grp., Inc.*, 286 Ga. App. 568, 570 (649 SE2d 813) (2007).

> The issue of attorney fees under OCGA § 13-6-11 is a question for the [fact finder], and an award will be upheld if any evidence is presented to support the award. However, a plaintiff is entitled to recover attorney fees only for that portion of the fees which are allocable to the attorney's efforts to prosecute a successful claim against a defendant.

*Premier Cabinets, Inc. v. Bulat*, 261 Ga. App. 578, 582 (5) (583 SE2d 235) (2003). "[O]btaining some but less than all of the relief sought is sufficient to authorize an award of attorney fees." *Magnetic Resonance Plus, Inc. v. Imaging Sys. Intl.*, 273 Ga. 525, 528 (3) (543 SE2d 32) (2001).

(a) First, we determine that there was an evidentiary basis for the attorney fee award.

Husfeld knew that the punch list included items that were either incomplete or incorrectly completed, he assured the Simpsons that the items would be resolved, and he also received Davis' report. Accordingly, there was evidence that Birch Properties was entirely aware of the existence of construction defects in and around the home.

26

Husfeld also acknowledged that there remained disputes regarding outstanding issues with the construction up to four months after he received the punch list. There was also evidence that Birch Properties continued to make insufficient repairs to the home. For instance, putty was placed on the wood flooring, but it "crumbled and fell out," and a shim was placed in the kitchen but it "pulled right back toward the wall." Brian Simpson testified that, even after several months, Birch Properties insisted on offering "band-aid" solutions for pervading issues in the home, and there were numerous other repairs that were never initiated. Shannon Simpson explained that Husfeld often told her that repair personnel would come to the home, that they would never arrive, and that eventually, she "just had enough." Then, after the Simpsons acknowledged that the parties remained at an impasse and offered to settle the matter, Birch Properties refused. Thus, there was some evidence authorizing the trial court's award of attorney fees under OCGA § 13-6-11. *Clearwater Constr. Co. v. McClung*, 261 Ga. App. 789, 792 (584 SE2d 61) (2003) (attorney fees allowed under OCGA § 13-6-11 where the construction company failed to take the steps necessary to repair the insulation system and address all of the problems with the installation, further damage to the system and the home occurred, and the parties were "at loggerheads" as to what was necessary to remedy the acknowledged problems with the system). See

27

also *Charter Drywall Atlanta, Inc. v. Discovery Tech., Inc.,* 271 Ga. App. 514, 517 (2) (610 SE2d 147) (2005) (attorney fees allowed for stubborn litigiousness where there was no bona fide controversy as to the drywall company's failure to complete the work adequately, and there was evidence of the company's insistence on pursuing protracted litigation).[7]

(b) Birch Properties also claims that the trial court erred in failing to make findings of fact and conclusions of law as to the attorney fee award. This argument has been waived.

As discussed above, Birch Properties failed to request findings of fact and conclusions of law under OCGA § 9-11-52. *Hampshire Homes, Inc. v. Espinosa Constr. Svcs., Inc.*, 288 Ga. App. 718, 724 (3) (655 SE2d 316) (2007) (appellant waived its argument that the trial court failed to make findings on an attorney fee award under OCGA § 13-6-11 because the appellant did not make a post-judgment motion challenging the sufficiency of the trial court's findings). Compare *Parland v.*

---

[7] Birch Properties insists that there was a bona fide controversy regarding damages, which precluded the claim for attorney fees. Nonetheless, a factfinder "may award attorney fees under OCGA § 13-6-11 if there is no bona fide controversy as to liability, even if there is a bona fide controversy as to damages." *Daniel v. Smith*, 266 Ga. App. 637, 641 (3) (597 SE2d 432) (2004); *Horton v. Dennis*, 325 Ga. App. 212, 216 (750 SE2d 493) (2013) (same).

28

*Millennium Constr. Svcs., LLC*, 276 Ga. App. 590, 593 (623 SE2d 670) (2005) (requiring findings of fact and conclusions of law on the award under OCGA § 13-6-11 but not addressing waiver).[8]

(c) Nevertheless, we agree with Birch Properties that the trial court's decision to award the attorney fees in a lump sum amount constitutes error. Therefore we reverse the award and remand this case for an evidentiary hearing to allow the Simpsons to establish the portion of the fees which is allocable to their attorney's prosecution of their successful claims.

The Simpsons had the burden of proof on the issue of attorney fees, and they were required to segregate out the hours that were recoverable from those hours that were unrecoverable. *Premier Cabinets, Inc.*, supra, 261 Ga. App. at 582 (5). At trial, however, the Simpsons merely proved the total amount of attorney fees incurred, and

---

[8] We acknowledge, however, that where a trial court enters an attorney fee award under OCGA § 9-15-14, findings of fact and conclusions of law are mandated and waiver is inapplicable. *Gilchrist v. Gilchrist*, 287 Ga. App. 133, 133-134 (1) (650 SE2d 795) (2007). Although Birch Properties urges the Court to adopt this approach in this case, we will not do so. OCGA § 13-6-11 provides for attorney fees and litigation expenses as *compensatory damages*, which would otherwise be awarded by a jury as part of the verdict, while OCGA § 9-15-14 provides for an award of attorney fees as a court-ordered *sanction*. *Junior v. Graham*, 313 Ga. 420, 425 (2) (b) (2022) (870 SE2d 378); *Hill v. Doe*, 239 Ga. App. 869 (2) (522 SE2d 471) (1999). Given the differing nature of these attorney fees, we will not depart from this Court's precedent on the issue of waiver.

no evidence was presented from which the trial court could determine what portion was attributable solely to prosecuting their successful claims.[9] Their counsel's account statement delegated various fees to different tasks performed, but it was not of "sufficient particularity to permit the [the trial court] to distinguish between time and expenses attributable to [the] successful claim[s] and time and expenses attributable to the pursuit of [the] unsuccessful claim and the defense of [the] counterclaim[s]." Id. Counsel's testimony at trial regarding the fees incurred was no more illuminating. Therefore, "[u]nder the state of the evidence in the present case, the [trial court] would have been forced into a posture of pure speculation as to which fees were attributable solely to prosecuting [the] successful claim[s]." Id.

Contrary to the Simpsons' argument, Birch Properties has not waived this claim of error by being derelict in its cross-examination or by failing to request findings of fact and conclusions of law. The award of attorney fees in this case is "contrary to the law" and simply "cannot be upheld as authorized pursuant to OCGA § 13-6-11." *Premier Cabinets, Inc.*, supra, 261 Ga. App. at 583 (5). Additionally, although the Simpsons claim that their successful breach of contract claim and their unsuccessful

---

[9] It appears that the trial court awarded approximately all the attorney fees requested.

negligent construction claim were too similar to allow for the separation of the hours spent on each claim, the trial court would also have been unable to discern the number of hours allocated to defending the separate counterclaims filed by Birch Properties and Husfeld. See *Emerson v. Brookmere Homeowners Assn., Inc.*, 311 Ga. App. 371, 372 (715 SE2d 775) (2011) (under OCGA § 13-6-11, plaintiff cannot recover expenses of defending against a counterclaim); *Paul v. Destito*, 250 Ga. App. 631, 642 (9) (550 SE2d 739) (2001) (plaintiff could not recover attorney fees in defending against counterclaim alleging that he owed money to the defendant). Therefore, we reverse the trial court's award of attorney fees to the Simpsons and remand to the trial court for an evidentiary hearing to allow the Simpsons to establish the amount of attorney fees that was attributable to their prevailing claims. *Terrell v. Pippart*, 314 Ga. App. 483, 485 (2) (724 SE2d 802) (2012); *Premier Cabinets, Inc.*, supra, 261 Ga. App. at 583 (5); *David C. Joel, Attorney at Law, P.C. v. Chastain*, 254 Ga. App. 592, 597 (4) (562 SE2d 746) (2002).

*Case No. A22A0064*

7. In their cross-appeal, the Simpsons argue that the trial court erred in not imposing any liability against Husfeld in his individual capacity on their negligent construction claim because Husfeld was the sole employee of Birch Properties and

31

was responsible for approving the work done by Birch Properties' contractors. We conclude that sufficient evidence supported the trial court's judgment in Husfeld's favor on this claim.

"[A] person who is a member, manager, agent, or employee of a limited liability company is not liable, for a debt, obligation, or liability of the limited liability company, . . . whether arising in contract, tort, or otherwise." (Punctuation omitted.) *Primary Investments, LLC v. Wee Tender Care III, Inc.*, 323 Ga. App. 196, 199 (1) (746 SE2d 823) (2013) (quoting OCGA § 14-11-303 (a)). This principle applies regardless of whether an individual is the sole operator of the limited liability company. Cf. *Christopher v. Sinyard*, 313 Ga. App. 866, 867 (1) (723 SE2d 78) (2012) ("[T]he mere operation of [a] corporate business does not render one personally liable for corporate acts.") (citation omitted). Nevertheless, "[a]n LLC member may be held individually liable if he or she personally participates or cooperates in a tort committed by the LLC or directs it to be done." *Milk v. Total Pay & HR Sols., Inc.*, 280 Ga. App. 449, 454 (634 SE2d 208) (2006). Accordingly, if Birch Properties was negligent in constructing the home, Husfeld "could be held personally liable for the negligent construction if he specifically directed the manner in which the house was constructed or participated or cooperated in its negligent

32

construction." *Baja Properties, LLC v. Mattera*, 345 Ga. App. 101, 104 (2) (812 SE2d 358) (2018).

Here, the trial court was authorized to determine that Husfeld neither directed the manner in which the home was constructed nor participated or cooperated in its negligent construction. Husfeld testified that he does not supervise the subcontractors; instead, he receives information from the homeowners about their desires for the home, conveys this information to the subcontractors, and pays the subcontractors for their work. Although Birch Properties provides a warranty for the home, Husfeld relies on the subcontractors to ensure that the work is completed. Husfeld "looks at [the] work to see if it's been done right," but he would not actually know whether a job is completed properly because he has no specialized knowledge in areas such as plumbing and electrical work. He explained that he is not required to be on the job site, and on the occasions that he did visit the job site, he merely locked and unlocked the home.

Although the Simpsons argue that Husfeld had a duty to supervise the subcontractors' work, they cite to no common law or statutory authority for this proposition. And while we are mindful that a general contractor can potentially incur personal liability where he affirmatively *undertakes* to supervise construction work

and does so negligently, there was no evidence that Husfeld engaged or sought to engage in any supervision. Compare *Schofield Interior Contractors, Inc. v. Standard Bldg. Co., Inc.*, 293 Ga. App. 812, 815 (668 SE2d 316) (2008) (project manager had a duty to "perform the supervision" of the construction work skillfully, carefully, diligently, and in a workmanlike manner); *Howell v. Ayers*, 129 Ga. App. 899, 900 (4) (202 SE2d 189) (1973) (evidence was sufficient to show the contractor's negligence "in undertaking to supervise" the construction work).

Given Husfeld's testimony, the trial court was allowed to conclude that Husfeld was not personally liable for the negligent construction. Compare *Fields Bros. Gen. Contractors v. Ruecksties*, 288 Ga. App. 674, 677-678 (2) (655 SE2d 282) (2007) (trial court properly found general contractor personally liable where he was the lead framer for the home and he inspected others' work); *Cherry v. Ward*, 204 Ga. App. 833, 834 (1) (a) (420 SE2d 763) (1992) (general contractor was personally liable where he "acknowledged that he was personally involved in the construction of [the] appellee's home on a daily basis, personally supervised the construction 'from start to finish,' and worked as the 'project foreman' for the job"). Accordingly, the trial court was entitled to find in Husfeld's favor on the negligent construction claim.

*Judgment affirmed in Case No. A22A0064. Judgment affirmed in part, reversed in part and case remanded with direction in Case No. A22A0063. Rickman, C. J., and Pipkin, J., concur.*